UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHARLES H. LEWIS and JANE W. LEWIS, | NO. CIV. S-03-2646 WBS KJM |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER RE: AUTOMATIC BANKRUPTCY STAY |
| ROBERT D. RUSSELL; IRENE RUSSELL; BEN J. NEWITT; the Estate of PHILLIP NEWITT, Deceased; JUNG HANG SUH; SOO JUNG SUH; JUNG K. SEO; THE DAVIS CENTER, LLC; MELVIN R. STOVER, individually and as trustee of the Stover Family Trust; EMILY A. STOVER, individually and as trustee of the Stover Family Trust; STOVER FAMILY TRUST; RICHARD ALBERT STINCHFIELD, individually and as successor trustee of the Robert S. Stinchfield Separate Property Revocable Trust, and as trustee of the Barbara Ellen Stinchfield Testamentary Trust; ROBERT S. STINCHFIELD SEPARATE PROPERTY REVOCABLE TRUST; THE BARBARA ELLEN STINCHFIELD TESTAMENTARY TRUST; WORKROOM SUPPLY, INC., a California corporation; SAFETY-KLEEN CORPORATION, a California corporation; the CITY OF DAVIS; JENSEN MANUFACTURING COMPANY; VIC MANUFACTURING COMPANY; MARTIN FRANCHISES INC., aka/dba MARTINIZING DRY CLEANING, | |

```
                Defendants,                     /
```

AND RELATED COUNTER, CROSS,
AND THIRD PARTY CLAIMS.
                                                /

----oo0oo----

I.   Factual and Procedural Background

This multi-party litigation concerns the contamination of a piece of real property located in Davis, California, with tetrachloroethene ("PCE"), a solvent allegedly released through the operation of a dry cleaning facility on the property. (See Second Am. Compl. ("SAC") (Docket No. 197) ¶ 40.) Charles H. Lewis and Jane W. Lewis brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, and various state laws for recovery of response costs incurred in connection with the PCE contamination. Since the filing of the original Complaint, the parties have filed numerous counterclaims, crossclaims, and third party claims for contribution pursuant to 42 U.S.C. § 9613(f).

During the period in which the court stayed this action to facilitate an agreed-upon settlement process, Jung Hang Suh and Soo Jung Suh ("Suhs")--defendants, cross-defendants, counter-defendants, counter-claimants, and cross-claimants who allegedly operated the dry cleaning facility from 1996 through 2005 (SAC ¶ 36)--filed for bankruptcy. (See Dec. 14, 2005 Order (Docket No. 162) 1:25.) At that time, the assigned Magistrate Judge acknowledged the uncertain effect of an automatic stay pursuant to 11 U.S.C. § 362(a) in light of the settlement stay then in

effect, but nonetheless ordered that the Suhs need not participate in the settlement process. (Dec. 14, 2005 Order 1:25-2:3.)

Following the court's Order dissolving the settlement stay on September 12, 2008, the court requested briefing from the non-bankrupt parties addressing the effect of the automatic bankruptcy stay on future proceedings in this action. (Apr. 1, 2009 Order (Docket No. 274).) The parties filed more than a dozen responses. (See Docket Nos. 275-282, 284-286, 291, 296.) After an initial hearing on the issue, the court ordered counsel for all parties to appear at a further hearing on May 4, 2009. (Apr. 16, 2009 Order (Docket No. 290).) The court now rules as follows on the effect of the automatic bankruptcy stay.[1]

II. Discussion

"The automatic stay of 11 U.S.C. § 362(a)(1) prevents the 'commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement' of the bankruptcy case." Dean v. Trans World Airlines, Inc., 72 F.3d 754, 755 (9th Cir. 1995). "By halting all collection efforts, the stay affords the debtor time to propose a reorganization plan, or simply 'to be relieved of the financial pressures that drove him into bankruptcy.'" In re Gruntz, 202

---

[1] It is not clear to what extent the non-bankrupt parties in this litigation have filed proofs of claims or otherwise made appearances in the Suhs' bankruptcy action. It appears that at least several of the parties have obtained an exception to the stay to pursue claims against the Suhs' insurer, if one exists, to offset any claims brought by the Suhs against them. (See Docket No. 276.)

F.3d 1074, 1081 (9th Cir. 2000) (quoting Benedor Corp. v. Conejo Enters., Inc., 96 F.3d 346, 351 (9th Cir. 1996)). Because of the importance of the automatic stay, "actions taken in violation of the automatic stay are void." Id. at 1082 (citing In re Schwartz, 954 F.2d 569, 571 (9th Cir. 1992)). "[A] district court has jurisdiction to decide whether the automatic stay applies to a proceeding pending before it . . . ." Lockyer v. Mirant Corp., 398 F.3d 1098, 1107 (9th Cir. 2005).

"In the absence of special circumstances, stays pursuant to section 362(a) are limited to debtors and do not include [claims against] non-bankrupt co-defendants." Ingersoll-Rand Fin. Corp. V. Miller Mining Co., 817 F.2d 1424, 1427 (9th Cir. 1987) (citing Teachers Ins. & Annuity Ass'n of Am. v. Butler, 803 F.2d 61, 65 (2d Cir. 1986)). Likewise, the automatic stay also does not ordinarily apply to claims asserted *by* the debtor. See In re Merrick, 175 B.R. 333, 338 (B.A.P. 9th Cir. 1994); see also Parker v. Bain, 68 F.3d 1131, 1137 (9th Cir. 1995) ("'Multiple claim and multiple party litigation must be disaggregated so that particular claims, counterclaims, cross claims and third-party claims are treated independently when determining which of their respective proceedings are subject to the bankruptcy stay.'" (quoting and adopting Maritime Elec. Co. v. United Jersey Bank, 959 F.2d 1194, 1204-05 (3d Cir. 1992))).

The Ninth Circuit has not specifically identified what situations raise "special" or "unusual circumstances" that necessitate a broader stay of claims pursuant to § 362(a). See In re Excel Innovations, Inc., 502 F.3d 1086, 1098 (9th Cir. 2007) (noting ambiguity in the case law regarding the viability

4

of the "unusual circumstances" exception, but declining to reach the question). But see A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 999 (4th Cir. 1986) (holding that "unusual circumstances" requiring a broader stay exist when "there is such identity between the debtor and the third-party defendant . . . that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor").

Nevertheless, the case law in this Circuit establishes that, following an automatic stay, a court may not rule on issues that require the court to consider the possible liability of the debtor in the underlying case. See Dean, 72 F.3d at 756-57 (providing that a court may only consider a motion to dismiss a claim against the debtor if "there [is] no conceivable way for the court's consideration of the motion to harm the bankrupt" defendant); see also Bihari v. DDJ Capital Mgmt., LLC, 306 B.R. 336, 338 (E.D. Cal. 2004) (Burrell, J.) (citing Piccinin and holding that the automatic stay barred an action against certain shareholders, directors, and officers of a corporation that had filed a bankruptcy petition).

Here, the non-bankrupt parties contend that § 362(a) stays only those claims asserted against the Suhs, and the parties may proceed on all other claims, including those asserted against other parties and those asserted *by* the Suhs. Because of the nature of the claims in this case, however, it is not possible to draw a meaningful distinction between claims asserted against the Suhs and all other claims.

The claims, crossclaims, counterclaims, and third party claims for cost recovery and contribution under CERCLA make up

the heart of this litigation.  The ultimate resolution of these claims on the merits will require the court to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1); see United States v. Atl. Research Corp., 127 S. Ct. 2331, 2339 (2007) ("Resolution of a [42 U.S.C. § 9613(f)] counter-claim would necessitate the equitable apportionment of costs among the liable parties, including the [potentially responsible party ("PRP")] that filed the [42 U.S.C. § 9607] action.").  To achieve an equitable allocation, a district court exercises significant discretion in deciding what factors should be considered.  See Boeing Co. v. Cascade Corp., 207 F.3d 1177, 1187 (9th Cir. 2000); Envtl. Transp. Sys., Inc. v. ENSCO, Inc., 969 F.2d 503, 509 (7th Cir. 1992) (providing that "a court may consider several factors, a few factors, or only one determining factor . . . depending on the totality of circumstances presented to the court").

Resolution of the Suhs' non-CERCLA offensive claims and the non-bankrupt parties' claims against each other similarly depends upon the court's equitable allocation of response costs among the liable parties.  The Suhs' non-CERCLA offensive claims constitute either express claims for equitable indemnity and contribution or claims such as negligence and continuing trespass for which the Suhs specifically seek damages in the amount of their assessed liability for environmental response costs.[2]  (See

---

[2] The Suhs have asserted the following non-CERCLA claims against plaintiffs Charles H. and Jane W. Lewis: equitable indemnity, contractual indemnity, breach of contractual duty to indemnify, negligence, nuisance, attorney's fees for implied indemnity pursuant to California Code of Civil Procedure section

Docket Nos. 13, 86, 91.)  The Suhs' offensive claims are thus premised on reducing the amount of their liability to the other parties based on the other parties' claims against them.  The non-bankrupt parties have asserted similar, if not identical, claims against each other.  (E.g., Docket Nos. 27, 49, 73, 78, 83.)

Such highly inter-related and dependent claims are typical of multi-party litigation concerning the recovery of environmental response costs.  While the claims may be technically distinguishable as claims "by" or "against" certain parties, the cumulative effect of all the parties' claims is essentially an equitable allocation of response costs by the court.  The cleanup costs simply comprise a single finite obligation, that must be divided among the liable parties.  The court cannot consider the Suhs' arguments for increasing the size of the other parties' shares without also considering the size of the Suhs' portion of liability, if any.  Similarly, the court cannot determine the relative shares of the non-bankrupt parties without making findings as to the size of the share allocatable to the Suhs.

---

1021.6, fraud, negligent misrepresentation, trespass, and declaratory relief establishing the parties' liability for contamination investigation and remediation costs.  (Docket No. 13.)

With respect to the other parties in the litigation, the Suhs have asserted the following non-CERCLA claims: equitable indemnity and contribution, attorney's fees for implied indemnity pursuant to California Code of Civil Procedure section 1021.6, indemnity or contribution pursuant to California Health and Safety Code section 25363(e), negligence, nuisance, continuing nuisance, fraud, negligent misrepresentation, trespass, continuing trespass, and declaratory relief establishing the parties' liability for contamination investigation and remediation costs.  (Docket Nos. 86, 91.)

Consequently, claims "against" the Suhs cannot be meaningfully excised from the litigation--as long as the litigation moves forward, the court will have to make findings as to the Suhs' potential liability in order to allocate shares of liability to all the other parties. Even though the Suhs' liability may ultimately qualify as an "orphan share" if and when the Suhs are discharged from bankruptcy, the court must still determine their portion of liability in order to distribute this share among the other PRPs. See Pinal Creek Group v. Newmont Mining Corp., 118 F.3d 1298, 1303 (9th Cir. 1997) (providing that "orphan shares"--shares of liability attributable to absent or insolvent PRPs--should be distributed equitably among the other PRPs), overruled on other grounds by Atl. Research Corp., 127 S. Ct. at 2331.

In addition, going forward with litigation of all claims other than those asserted against the Suhs would create insoluble discovery issues. The non-bankrupt parties argue that they may propound discovery against the Suhs in order to litigate the Suhs' offensive claims and the non-bankrupt parties' claims against each other. In general, parties may seek discovery from a debtor on matters related to claims against non-debtor parties. See In re Miller, 262 B.R. 499, 505 (B.A.P. 9th Cir. 1991) (holding that the automatic stay did not prevent the plaintiff from deposing the debtor to the extent the discovery concerned claims against debtor's husband, not the stayed claims against debtor).

Because of the inter-related and dependent nature of the claims in this case, however, discovery against the Suhs

would inherently touch on factual issues regarding the Suhs' potential liability for response costs and may serve to bolster claims against the Suhs. Even discovery directed against the non-bankrupt parties may be aimed at building a case against the Suhs. The court cannot monitor every question asked by interrogatory or at deposition to assure that it cannot be used to establish the Suhs' liability directly or indirectly by reducing the proportionate liability of other parties.

In order to effectively protect themselves against the risk that their liability to the other parties may be established by continued litigation of this action, the Suhs would have to actively litigate the remaining claims, which would run afoul of one of the central purposes of the automatic stay--to relieve the debtor "of the financial pressures that drove him into bankruptcy.'" In re Gruntz, 202 F.3d at 1081; see In re Stringer, 847 F.2d 549, 552 (9th Cir. 1988) (citing legislative history and noting that the automatic stay "stops all collection efforts, all harassment, and all foreclosure actions"); Butler, 803 F.2d at 65 (providing that § 362(a) stays actions that "distract a debtor's attention from its primary goal of reorganizing").[3] This is particularly so here, where the Suhs

---

[3] The parties have identified two cases, United States v. Mallinckrodt, Inc., No. 02-1488, 2004 WL 2624870, at *2 (E.D. Mo. Mar. 9, 2004), and In re Voluntary Purchasing Groups, 205 B.R. 80, 81 (Bankr. E.D. Tex. 1996), in which courts held that the automatic bankruptcy stay did not apply to claims asserted by debtors in CERCLA actions. First, this court does not mean to say that a full stay of all claims is necessary in *all* CERCLA actions. Each case must be analyzed on its individual facts. Second, in neither of these rather brief decisions, however, did the courts consider or address the effect of the particular equitable allocation required in CERCLA actions. The courts

appear to be proceeding pro se since the withdrawal of their attorney in December 2005 (see Dec. 14, 2005 Order 1:23-24).

The City of Davis ("City") separately argues that this action qualifies for the statutory exception to the automatic stay for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police or regulatory power." 11 U.S.C. § 362(b)(4). "The 'police or regulatory power' exception allows the enforcement of laws affecting health, welfare, morals, and safety despite the pendency of the bankruptcy proceeding." Mirant Corp., 398 F.3d at 1107. Pursuant to this provision, an action brought by a governmental unit to enforce CERCLA is not affected by the automatic bankruptcy stay. City of New York v. Exxon Corp., 932 F.2d 1020, 1024 (2d Cir. 1991).

Here, the City did not institute these proceedings to enforce its police or regulatory powers. Instead, the City, like other initial defendants in this litigation, simply responded to the plaintiffs' CERCLA claims by asserting its own CERCLA counter- and cross-claims against other parties.[4] (See Docket Nos. 17-18). This action therefore does not qualify for an exception under § 362(b)(4). Cf. Exxon Corp., 932 F.2d at 1024 (holding that the automatic stay did not apply to a CERCLA action

simply cited the general rule that the automatic stay does not apply to claims asserted by the debtor. The court thus does not find these cases persuasive.

[4] The SAC alleges that the City, which owns and maintains the underground sewer system that services the property at issue, permitted "gaps and cracks to form in the joints and body of the underground sewer system, thereby permitting release(s) of PCE" onto the property. (SAC ¶ 39.)

10

originally filed by a municipality to recover its costs in removing hazardous waste from its landfills); <u>United States v. Mallinckrodt, Inc.</u>, No. 02-1488, 2004 WL 2624870, at *2 (E.D. Mo. Mar. 9, 2004) (providing that § 362(b)(4) applied to a CERCLA action brought by the United States against a debtor).

Accordingly, in light of the foregoing reasons, this entire action must be stayed pursuant to 11 U.S.C. § 362(a).

IT IS THEREFORE ORDERED that these proceedings be, and the same hereby are, STAYED until the Suhs' bankruptcy action is terminated or relief is obtained from the automatic stay.[5]

DATED: May 7, 2009

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[5] As the court has repeatedly suggested, if the non-bankrupt parties wish to go forward with this case they are free to seek relief from the automatic stay, a remedy which thus far they have not chosen to pursue. If such relief is obtained, or if for any reason the Suh's bankruptcy is terminated, any party may so notify the court and the court will lift this stay.

11