UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHARLES H. LEWIS and JANE W. LEWIS, | NO. CIV. S-03-2646 WBS CKD |
| Plaintiffs, | |
| v. | MEMORANDUM AND ORDER RE: MOTION FOR ORDER APPROVING SETTLEMENT AND BARRING CONTRIBUTION CLAIMS |
| ROBERT D. RUSSELL; IRENE RUSSELL; BEN J. NEWITT; the Estate of PHILLIP NEWITT, Deceased; JUNG HANG SUH; SOO JUNG SUH; JUNG K. SEO; THE DAVIS CENTER, LLC; MELVIN R. STOVER, individually and as trustee of the Stover Family Trust; EMILY A. STOVER, individually and as trustee of the Stover Family Trust; STOVER FAMILY TRUST; RICHARD ALBERT STINCHFIELD, individually and as successor trustee of the Robert S. Stinchfield Separate Property Revocable Trust, and as trustee of the Barbara Ellen Stinchfield Testamentary Trust; ROBERT S. STINCHFIELD SEPARATE PROPERTY REVOCABLE TRUST; THE BARBARA ELLEN STINCHFIELD TESTAMENTARY TRUST; WORKROOM SUPPLY, INC., a California corporation; SAFETY-KLEEN CORPORATION, a California corporation; the CITY OF DAVIS; JENSEN MANUFACTURING COMPANY; VIC MANUFACTURING COMPANY; | |

1

```
 1  MARTIN FRANCHISES INC., aka/dba
    MARTINIZING DRY CLEANING,
 2
                Defendants.
 3  _____

 4  AND RELATED COUNTER, CROSS,
    AND THIRD PARTY CLAIMS.
 5  _____/
```

                        ----oo0oo----

Charles H. Lewis and Jane W. Lewis (the "Lewises") brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for recovery of costs incurred removing hazardous substances from a piece of real property located in Davis, California ("Property"). Charles Lewis, the surviving plaintiff, and defendant and counter-complainant Ben J. Newitt now request that the court approve the settlement they have reached.

I.   Factual and Procedural Background

This multi-party litigation concerns the contamination of the Property with tetrachloroethene ("PCE"), a chemical allegedly released through the operation of a dry cleaning facility on the Property. (See Second Am. Compl. ("SAC") ¶ 40 (Docket No. 197).) The parties include the alleged owners and managers of the Property during the relevant time period, the operators of the dry cleaning facility, the entities that supplied and removed the PCE, and the manufacturers of the equipment used in dry cleaning operations at the Property. (See id. ¶¶ 7-25; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2 (Docket No. 198).) The City of Davis is also a party to the litigation because of its alleged role in maintaining the underground sewer system that services the Property. (SAC ¶ 22.)

Since the filing of the original complaint in 2003, the parties have filed numerous counterclaims, crossclaims, and third-party claims for contribution pursuant to 42 U.S.C. § 9613(f).

In February 1999, the California Regional Water Quality Control Board, Central Valley Region ("RWQCB"), informed the owners and operators of the Property that it had discovered PCE in the soil and groundwater at the Property. (SAC ¶ 40.) The RWQCB then issued a Cleanup and Abatement Order on October 2, 2002, instructing the current and past owners and operators of the Property to investigate the extent of the PCE contamination and to prepare work plans to address the contamination. (Id. ¶ 42.) Thereafter, some of the parties, including the Lewises, incurred costs in carrying out the activities ordered by the RWQCB. (Id. ¶¶ 42, 46.)

The Lewises filed the Complaint in this action on December 9, 2003, seeking various forms of declaratory relief and asserting claims for cost recovery and contribution, 42 U.S.C. §§ 9607, 9613; contribution and/or indemnity, Cal. Health & Safety Code § 25363(e); equitable indemnity and contribution; negligence; and breach of contract. (See Compl. (Docket No. 1).) Ben J. Newitt was named as one of several defendants in the original Complaint, (id.), and in the Second Amended Complaint ("SAC") on the ground that he was an operator of the dry cleaning business located on the Property, (SAC ¶ 8). Several defendants filed crossclaims naming Newitt as a cross-defendant. (E.g., FATPC ¶ 11; Answer to Am. Compl. ¶ 150 (Docket No. 207); First Am. Cross-Cl. ¶ 5 (Docket No. 229).) Newitt also filed crossclaims of his own against other defendants and a

3

counterclaim, in which he sought contribution and indemnity from the Lewises should he be found liable. (Countercl. ¶¶ 26-29 (Docket No. 27); Answer to FATPC with Crosscl. ¶¶ 114-37 (Docket No. 226).)

Newitt disputes claims that he ever operated a dry cleaning business located on the Property. (Ans. to SAC ¶ 8.) Rather, he explains that when Phillip Newitt, his now-deceased brother, took over the dry cleaning business in December 1971, he made a business loan to Phillip and held title to the dry cleaning equipment located on the Property only as security on the loan. (Hunter-Cota Decl. ¶¶ 7h, g (Docket No. 364).) His brother operated the dry cleaning business until December 1975, for a total of four years or 9.64% of the period at issue in this proceeding. (Id. ¶ 7a.)

Throughout the litigation, Newitt has contested his liability for any contamination of the Property. (See, e.g., Ans. to SAC ¶¶ 95-96, 98; Statement Re: Participation in Settlement Process at 1:12-19 (Docket No. 215).) It is Newitt's position that he is properly considered a secured creditor under CERCLA who is shielded from liability, (Ans. to SAC ¶ 96), and that his peripheral involvement with the Property was too slight for him to have been able to form the intent necessary to establish liability for the state law claims asserted against him, (Statement Re: Participation in Settlement Process at 5:16-21).

Newitt and Lewis have reached a settlement that they now ask the court to approve. (Docket No. 362.) Under the terms of the proposed settlement, Newitt would pay Lewis $25,000 to be

4

used pursuant to the direction of the RWQCB to remediate the groundwater contamination at the Property. (Hunter-Cota Decl. ¶ 4.) Newitt would also dismiss his counterclaims against Lewis with prejudice. (<u>Id.</u>) Lewis, in turn, has agreed to dismiss his SAC as against Newitt with prejudice. (<u>Id.</u> ¶ 5.) Both parties have also agreed to give each other a "broad release with regard to the matters asserted in the instance [sic] action and with regard to the Site." (<u>Id.</u> ¶¶ 4-5.) Both parties' attorneys represent that the settlement is within the reasonable range of Newitt's potential liability and ability to pay, noting that Newitt's liability is contested, he is elderly, in ill health, and uninsured, and was only affiliated with the Property for four of the approximately forty-one years it used as a dry cleaning facility. (<u>Id.</u> ¶ 7.)

   Under the terms of the agreement, the settlement is contingent upon this court issuing an order that (1) approves the settlement, (2) dismisses with prejudice all claims asserted by Lewis against Newitt in this proceeding, (3) bars contribution and indemnity claims against Newitt in this proceeding, (4) dismisses with prejudice Newitt's counterclaims against Lewis, and (5) bars contribution and indemnity claims against Lewis with regard to the matters asserted in the Newitt counterclaims against Lewis. (Mem. of P. & A. in Supp. of Mot. for Order Approving Settlement at 2:22-3:2 (Docket No. 363).) The parties also ask that the court hold that the proportionate share approach of the Uniform Comparative Fault Act ("UCFA") applies with respect to the effect of the settlement on the liability of non-settling parties. (Not. of Mot. for Order Approving

5

1 | Settlement at 1:9-12, 24-25 (Docket No. 362).)
2 | While all parties received notice of the proposed
3 | settlement, no party has filed an opposition to it.
4 | II.   Discussion
5 |      A.   Federal Law Claims
6 |           "The initial decision to approve or reject a settlement
7 | proposal is committed to the sound discretion of the trial
8 | judge."  S.E.C. v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984)
9 | (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d
10 | 615, 625 (9th Cir. 1982)).  "Unless a consent decree is unfair,
11 | inadequate, or unreasonable, it ought to be approved."  Id.; see
12 | also Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947
13 | F. Supp. 790, 813 (D. N.J. 1996) ("In deciding whether to approve
14 | a proposed settlement in a CERCLA case, a district court must
15 | weigh the 'fairness, adequacy and reasonableness' of the proposed
16 | settlement." (quoting United States v. Rohm & Haas Co., 721 F.
17 | Supp. 666, 685 (D.N.J. 1989))).
18 |           The settlement proposed by Lewis and Newitt comes in a
19 | case that has dragged on for over eight years and in which trial
20 | is not set to begin for over a year more.  In environmental
21 | clean-up cases such as this one, resolution is often achieved
22 | through the settlement process.  Indeed, settlement is a favored
23 | outcome under CERCLA.  City of Emeryville v. Robinson, 621 F.3d
24 | 1251, 1264 (9th Cir. 2010) (citing United States v. Atl. Research
25 | Corp., 551 U.S. 128, 138-39 (2007); Kotrous v. Goss-Jewett Co. of
26 | N. Cal., Inc., 523 F.3d 924, 930-31 (9th Cir. 2007)).  Mindful of
27 | this fact, earlier in this proceeding the court approved a stay
28 | of litigation pending settlement talks.  (Docket No. 124.)

Although the initial settlement process outlined by the court was unsuccessful, settlement between parties remains an appropriate route to resolution in this CERCLA action.

Settlement with respect to Newitt is particularly appropriate given his age, ill health, limited ability to pay, and the fact that it is uncertain if he would ultimately be found liable at all for clean-up costs associated with the Property. Both parties were represented by counsel in settlement negotiations, and both parties' attorneys represent that the terms of the settlement are the best available to settle the parties' respective claims against each other. (Hunter-Cota Decl. ¶ 8.) These facts all suggest that the settlement is a fair and reasonable one.

The parties to the settlement request that the court find that the Uniform Comparative Fault Act determines what effect the settlement has on the liability of the non-settling parties. CERCLA itself does not specify how settlements in private party cost recovery actions should be apportioned or evaluated for fairness, merely charging district courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Nor has the Ninth Circuit issued a decision directly addressing the issue. Adobe Lumber, Inc. v. Hellman, No. CIV 05-1510, 2009 WL 256553, at *3 (E.D. Cal. 2009) (noting that "[i]n the twenty-eight years that CERCLA has been [sic] existence, the Ninth Circuit has never addressed the question of the proper credit method for settlements between private PRPs under CERCLA."). In a non-CERCLA case, the Ninth Circuit has,

7

however, stated that "[t]he proportionate share approach is the law in the Ninth Circuit." In re Exxon Valdez, 229 F.3d 790, 796 (9th Cir. 2000).

Under the proportionate share approach, the liability of non-settling parties is reduced by the proportionate share of the settling party or parties' obligations. Adobe Lumber, 2009 WL 256553, at *3 (citing Am. Cyanamid Co. v. Capuano, 381 F.3d 6, 20 (1st Cir. 2004)). This is in contrast to the pro tanto approach of the Uniform Contribution Among Tortfeasors Act ("UCATA"), under which the liability of non-settling parties is reduced only by the dollar amount of the settlement. Id. (citing In re Jiffy Lube Sec. Litig., 927 F.2d 155, 161 (4th Cir. 1991)). Under UCFA, if the settling parties' liability is eventually determined to be greater than the settlement amount, the plaintiff's recovery is reduced; under UCATA, if the settling parties' liability is less than the settlement amount, the remaining defendants must make up the deficit. Id. at *4. Accordingly, under the proportionate share approach that the parties to the settlement request, Lewis bears the risk of an inadequate settlement.

The overwhelming majority of courts in the Ninth Circuit that have addressed the issue have applied the UCFA in CERCLA cases. Adobe Lumber, 2009 WL 256553, at *3 (citing cases). These courts have noted that the UCFA furthers the Congressional intent behind CERCLA because it,

> 1) provides for equitable apportionment of responsibility; 2) furthers settlement because no precise dollar amount need be determined upon settlement; 3) eliminates the need for a good faith hearing; and 4) prevents culpable settlors from escaping liability

8

1           (whereas under a pro tanto rule, a settlor who paid more
            than his fair share would reduce the liability of
2           nonsettlors, a result which discourages settlement).

3   Patterson Envnt'l Response Trust v. Autocare 2000, Inc., No. CIV

4   F 01-6606, 2002 U.S. Dist. LEXIS 28323, at *14 (E.D. Cal. June

5   28, 2002) (citing Comerica Bank-Detroit v. Allen Indus., Inc.,

6   769 F. Supp. 1408, 1414 (E.D. Mich. 1991)).

7           The court can find no reason that it should not also

8   adopt the proportionate share approach of the UCFA in this case,

9   especially since Lewis, the party who bears the risk that the

10  $25,000 settlement will be less than Newitt's ultimately

11  adjudicated liability, joins in the request that the court adopt

12  the UCFA.  Additionally, the City of Davis conditions its

13  statement of non-opposition on the application of the UCFA, (City

14  of Davis's Not. of Non-Opp'n at 2:5-7 (Docket No. 372)),

15  suggesting that doing so would not harm the interests of non-

16  settling defendants.

17          The settlement is also contingent upon two contribution

18  bars.  In order to facilitate settlement in multi-party

19  litigation, a court may review settlements and issue bar orders

20  that discharge all claims of contribution by non-settling

21  defendants against settling defendants.  See In re Heritage Bond

22  Litig., 546 F.3d 667, 677 (9th Cir. 2008); Franklin v. Kaypro

23  Corp., 884 F.2d 1222, 1225 (9th Cir. 1989).  A number of courts

24  have held that it is permissible to bar contribution claims

25  against settling parties in a CERCLA contribution action, "in

26  accordance with the federal common law as exemplified by § 6 of

27  the Uniform Comparative Fault Act or § 4 of the Uniform

28  Contribution Among Tortfeasors Act."  Responsible Envtl.

Solutions Alliance v. Waste Mgmt., Inc., No. 3:04cv013, 2011 WL 382617, at *4 (S.D. Ohio Feb. 3, 2011) (citing Stearns & Foster Bedding Co., 947 F. Supp. at 813; Foamseal, Inc. v. Dow Chem., 991 F. Supp. 883, 886 (E.D. Mich. 1998); Barton Solvents, Inc. v. Sw. Petro-Chem, Inc., 834 F. Supp. 342, 345-46 (D. Kan. 1993); Am. Cyanamid Co. v. Kino Indus., Inc., 814 F. Supp. 215, 219 (D.R.I. 1993); Comerica Bank-Detroit, Inc., 769 F. Supp. at 1413. Indeed, another court in this district has noted that such an order is often particularly appropriate in CERCLA cases. AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc., Nos. CIV. S-00-113, S-04-1494, 2007 WL 1946635, at *2 (E.D. Cal. July 2, 2007) (citing Foamseal, Inc., 991 F. Supp. at 886).

    There are two contribution bars proposed by the settlement agreement. The first would protect Lewis from indemnity or contribution claims that "with regard to the matters asserted in the Newitt counter-claims against Lewis," (Mot. for Order Approving Settlement at 1:22-23), which are claims for indemnity or contribution from Lewis should Newitt be found liable. The second is a bar that would protect Newitt from contribution and indemnity claims that "relate to or arise from the matters addressed in the action or related to the PCE contamination at [the Property]." (Mem. of P. & A. in Supp. of Mot. to Approve Settlement at 1:10-12.) In exchange for this broader bar, Newitt also agrees to dismiss his crossclaims against the remaining defendants.

    The City of Davis wished to clarify that the proposed contribution bars would not bar it from seeking contribution from Lewis. (City of Davis's Not. of Non-Opp'n at 2:7-9.) The only

contribution claims that Lewis would be protected from under the requested bar are contribution claims related to Newitt's counterclaim, which in turn is a claim for indemnity or contribution only for Newitt's liability.  Illustration of the limited nature of this contribution bar comes from comparing it to the broad bar provided to Newitt, who is protected from any contribution or indemnity claims related to the contamination of the property.  As the City of Davis could not ask for contribution from Lewis for the liability of a third party such as Newitt, the City of Davis is not prevented from bringing any contribution claims that it could have asserted without the bar.

In considering whether to approve the settlement, the court notes that it is entirely reasonable that Newitt would wish to free himself from the burden of litigation by settling the claims between Lewis and himself.  It is also entirely reasonable that Lewis would wish to accept certain payment from a defendant whose liability is uncertain and who has a limited ability to pay.  Although Lewis and Newitt did not explain how the $25,000 settlement payment compares to the total clean-up costs, the fact that Lewis, who bears the risk that $25,000 ultimately proves inadequate, contends that it is a reasonable settlement payment suggests that it is an adequate amount.  No party has objected to the proposed settlement and the court can find no reason not to find it a fair, reasonable, and adequate one.

B.   State Law Claims

Although some courts asked to approve an agreement such as this one that would settle both CERCLA and state law claims have considered exclusively federal law, Acme Fill Corp., 1995 WL

11

822664, at *9, others have considered both federal and state law, AmeriPride Servs. Inc., 2007 WL 1946635, at *3-4. Under California law, parties to a settlement in an action with multiple tortfeasors may petition the court to make a determination that the settlement was entered into in good faith. See Cal. Civ. Proc. Code §877.6(a). A hearing need not be held if non-settling parties are afforded an opportunity to respond to the request for good faith determination. See Cal. Civ. Proc. Code § 877.6(a)(2).

In determining whether a settlement agreement has been made in good faith, California courts consider "(1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; and (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1064 (9th Cir. 2011) (quoting Tech-Bilt, Inc. v. Woodward-Clyce Assocs., 38 Cal. 3d 488, 499 (1985)) (internal quotation marks omitted). "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." Id.

In this case, there is no suggestion of collusion or fraud. As noted above, although the parties have not shown how the $25,000 settlement payment compares to the total clean-up costs, the fact that Lewis is willing to accept that amount while bearing the risk that it is less than what Newitt might

12

1  ultimately have been required to pay suggests that it is in the
2  range of appropriate settlement amounts.  Additionally, under
3  section 877, any party challenging a settlement bears the burden
4  of establishing that the proposed settlement amount is "so far
5  'out of the ballpark' that the equitable objectives of § 877 are
6  not satisfied."  Tyco Thermal Controls LLC v. Redwood Indus., No.
7  C 06-07164, 2010 WL 3211926, at *13 (N.D. Cal. Aug. 12, 2010)
8  (citing Tech-Bilt, 38 Cal. 3d at 499-500).  No party here has
9  even attempted to make such a showing.
10          Furthermore, under California Code of Civil Procedure
11 section 877.6(a)(2), "[i]f none of the nonsettling parties files
12 a motion within 25 days of mailing of the notice, application,
13 and proposed order, or within 20 days of personal service, the
14 court may approve the settlement."  As previously noted, non-
15 settling parties received notice of the settlement, but none have
16 objected to the agreement.
17          Accordingly, the court finds that the settlement was
18 entered into in good faith.
19          IT IS THEREFORE ORDERED that:
20          (1) The settlement between Newitt and Lewis is
21 approved;
22          (2) Section 6 of the UCFA is adopted as the law in this
23 case for the purpose of determining the legal effect of the
24 settlement agreement on the liability of the non-settling
25 defendants;
26          (3) All claims for contribution or indemnity against
27 Newitt arising out of the clean-up of the Property be, and hereby
28 are, barred;

13

    (4) All claims for contribution or indemnity against Lewis arising out of the counterclaim asserted against him by Newitt be, and hereby are, barred;

    (5) All claims asserted by Lewis against Newitt in the SAC be, and hereby are, DISMISSED with prejudice.

    (6) All counter-claims asserted by Newitt against Lewis be, and hereby are, DISMISSED with prejudice; and

    (7) All crossclaims asserted by Newitt be, and hereby are, DISMISSED with prejudice.

DATED:   February 28, 2012

*[signature]*
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE