1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                         EASTERN DISTRICT OF CALIFORNIA

10
                                 ----oo0oo----
11

CHARLES H. LEWIS and JANE W.        NO. CIV. 2:03-2646 WBS CKD
12   LEWIS,

13            Plaintiffs,            MEMORANDUM AND ORDER RE: MOTION
                                     FOR SUMMARY JUDGMENT OR
14       v.                          ALTERNATIVELY, PARTIAL SUMMARY
                                     JUDGMENT
15   ROBERT D. RUSSELL; IRENE
     RUSSELL; BEN J. NEWITT; the
16   Estate of PHILLIP NEWITT,
     Deceased; JUNG HANG SUH; SOO
17   JUNG SUH; JUNG K. SEO; THE DAVIS
     CENTER, LLC; MELVIN R. STOVER,
18   individually and as trustee of
     the Stover Family Trust; EMILY
19   A. STOVER, individually and as
     trustee of the Stover Family
20   Trust; STOVER FAMILY TRUST;
     RICHARD ALBERT STINCHFIELD,
21   individually and as successor
     trustee of the Robert S.
22   Stinchfield Separate Property
     Revocable Trust, and as trustee
23   of the Barbara Ellen Stinchfield
     Testamentary Trust; ROBERT S.
24   STINCHFIELD SEPARATE PROPERTY
     REVOCABLE TRUST; THE BARBARA
25   ELLEN STINCHFIELD TESTAMENTARY
     TRUST; WORKROOM SUPPLY, INC., a
26   California corporation; SAFETY-
     KLEEN CORPORATION, a California
27   corporation; the CITY OF DAVIS;
     JENSEN MANUFACTURING COMPANY;
28   VIC MANUFACTURING COMPANY;

                                     1

MARTIN FRANCHISES INC., aka/dba
MARTINIZING DRY CLEANING,

           Defendants.

_____

AND RELATED COUNTER, CROSS,
AND THIRD PARTY CLAIMS.

_____/

----oo0oo----

          Charles H. Lewis and Jane W. Lewis (the "Lewises")
brought this action pursuant to the Comprehensive Environmental
Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.
§§ 9601-9675, for recovery of costs incurred to remove hazardous
substances from a piece of real property located in Davis,
California ("Property").  Presently before the court is defendant
Martin Franchises, Inc.'s ("Martin"), motion for summary judgment
or alternatively, partial summary judgment, on cross-claimant
City of Davis's ("City") First Amended Cross-Complaint ("FACC"),
pursuant to Federal Rule of Civil Procedure 56.

I.   <u>Factual and Procedural Background</u>

          This multi-party litigation concerns the contamination
of the Property with tetrachloroethene ("PCE"), a chemical
allegedly released through the operation of a dry cleaning
facility on the Property.  (Second Am. Compl. ("SAC") ¶ 40
(Docket No. 197).)  The parties include the alleged owners and
managers of the Property during the relevant time period; the
City, which allegedly contributed to the PCE contamination; the
operators of the dry cleaning facility; the entities that
supplied and removed the PCE; and the manufacturers of the
equipment used in dry cleaning operations at the Property.  (<u>Id.</u>

2

1  ¶¶ 7-25, 44; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2

2  (Docket No. 198).)  Since the filing of the original complaint in

3  2003, the parties have filed numerous counterclaims, cross-

4  claims, and third-party claims for contribution pursuant to 42

5  U.S.C. § 9613(f).

6          In 2001, the City provided the California Regional

7  Water Quality Control Board, Central Valley Region ("RWQCB") with

8  information that a pipe emerging from Lewis Cleaners was

9  discharging water into a broken pipe on the ground and that water

10 samples revealed elevated levels of PCE.  (Martin's Req. for

11 Judicial Notice ("Martin") Ex. 1 (Docket No. 409).)

12         The RWQCB then issued a Cleanup and Abatement Order

13 ("Abatement Order") on October 2, 2002, instructing the current

14 and past owners and operators of the Property to investigate the

15 extent of the PCE contamination and to prepare work plans to

16 address the contamination.  (SAC ¶ 42.)  The Abatement Order

17 stated that "[t]wo municipal wells are located within the

18 vicinity of the site," but also reported that "VOCs [volatile

19 organic compounds] have not been detected in any City municipal

20 wells."  (Martin Ex. 2.)  The City received a copy of the

21 Abatement Order.  (See Resp. to Martin's Stmt. of Undisputed

22 Facts ¶ 11 (Docket No. 419).)

23         On November 1, 2002, defendant Robert Russell, who

24 operated a dry cleaning business on the property from 1964 to

25 1971, petitioned his designation as a discharger in the

26 Abatement Order. (Martin Ex. 4.)  In his petition and

27 accompanying declaration, Russell admitted that he installed the

28 dry cleaning equipment used in his business and that, during his

3

"Russell's One Hour Martinizing" operations, he discharged the wastewater that the equipment generated into the City sewer system.  (Id.)

The RWQCB dismissed Russell's petition on January 15, 2003.  (Id. Ex. 5.)  On January 17, 2003, the RWQCB called for further investigation to determine if several City wells might be contaminated with PCE.  (Id. Ex. 6.)  It reported that PCE had been found below a bend in the City's sewer line on July 2, 2003. (Id. Ex. 7.)  The City received copies of all these documents. (See Resp. to Martin's Statement of Undisputed Facts ¶¶ 15, 17, 19.)

The Lewises filed the Complaint in this action on December 9, 2003, naming the City as a defendant.  (See Compl. (Docket No. 1).)  In their original Complaint, plaintiffs alleged that "gaps and cracks" in the City's sewer system permitted the release of PCE into the Property and adjacent properties.  (Id. ¶ 26.)  They also alleged that defendant dry cleaner operators Robert Russell and the Newitts were responsible, in part, for the leakage of PCE, identifying their respective businesses as "Russell's One Hour Martinizing" and "Newitt's One Hour Martinizing."  (Id. ¶¶ 7-9, 19-21.)

In November 2005, the City made two payments of $20,000 each toward the parties' joint investigation of the alleged contamination as part of the mediation process.  (King Decl. ¶ 10.)  On August 22, 2007, plaintiffs filed their SAC and brought Martin into the litigation for the first time as a defendant.  (See SAC ¶ 25.)  The City named Martin as a cross-defendant when it filed its FACC on February 29, 2008.  (See FACC

4

¶ 21 (Docket No. 229).)   The FACC asserted claims against Martin for recovery under CERCLA § 107(a), contribution under CERCLA § 113(f), strict products liability, negligence, negligence <u>per se</u>, public nuisance under California Civil Code Section 713, public nuisance under Davis Municipal Code Chapter 23.0.0, violation of Davis Municipal Code Chapter 33.0.0, contribution, equitable indemnity, declaratory relief under CERCLA § 113(g), and declaratory relief under 28 U.S.C. § 2201.

Martin filed its motion for summary judgment on all of the City's cross-claims on August 17, 2012.   (Docket No. 409.) The court here considers Martin's request for summary judgment only as to City's claims for negligence, negligence <u>per se</u>, strict products liability, and violation of Davis Municipal Code Chapter 33.0.0.   The following discussion is limited to those claims.

II.  <u>Requests for Judicial Notice/Evidentiary Objections</u>

Martin requests that the court take judicial notice of a number of documents in this case.   Because this is a motion for summary judgment, the court may consider the documents without taking judicial notice of them.   <u>See</u> <u>Century 21 Real Estate LLC v. All Prof'l Realty, Inc.</u>, No. Civ. 2:10-2751 WBS GGH, 2012 WL 3260452, at *10 (E.D. Cal. Aug. 8, 2012).

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."   Fed. R. Civ. P. 56(c)(2).   "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the

requirements of Federal Rules of Civil Procedure 56." <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).  Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial.  <u>See</u> <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Martin raises twelve objections to portions of two declarations the City submitted on the grounds of lack of foundation, inadmissible hearsay, the best evidence rule, and that the statements are conclusory.[1]

Statements based on speculation or improper legal conclusions, statements made without personal knowledge, and argumentative statements are not facts and can be considered only as arguments, not as facts, on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency.  Objections on any of these grounds are superfluous, and the court overrules them.

In the interest of brevity, and as Martin is aware of the substance of its remaining objections and the grounds asserted in support of them, the court will not review the substance or grounds of the individual objections here.  Martin's objections are all overruled.

---

[1]   Martin also objects to the Declaration of Ann Waid as untimely because it was filed four minutes late.  Notwithstanding the questionable merit of this objection, the court does not rely on the declaration and thus overrules the objection.

1   III.        Analysis

2         A.    Summary Judgment

3                Summary judgment is proper "if the movant shows that
4   there is no genuine dispute as to any material fact and the
5   movant is entitled to judgment as a matter of law."  Fed. R. Civ.
6   P. 56(a).[2]  A material fact is one that could affect the outcome
7   of the suit, and a genuine issue is one that could permit a
8   reasonable jury to enter a verdict in the non-moving party's
9   favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
10  (1986).  The party moving for summary judgment bears the initial
11  burden of establishing the absence of a genuine issue of material
12  fact and can satisfy this burden by presenting evidence that
13  negates an essential element of the non-moving party's case.
14  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).
15  Alternatively, the moving party can demonstrate that the
16  non-moving party cannot produce evidence to support an essential
17  element upon which it will bear the burden of proof at trial.
18  Id.

19               Once the moving party meets its initial burden, the
20  burden shifts to the non-moving party to "designate 'specific
21  facts showing that there is a genuine issue for trial.'"  Id. at
22  324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,
23  the non-moving party must "do more than simply show that there is
24  some metaphysical doubt as to the material facts."  Matsushita
25  Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

26  _____

27        [2]    Federal Rule of Civil Procedure 56 was revised and
    rearranged effective December 1, 2010.  However, as stated in the
    Advisory Committee Notes to the 2010 Amendments to Rule 56,
28  "[t]he standard for granting summary judgment remains unchanged."

1   "The mere existence of a scintilla of evidence . . . will be
2   insufficient; there must be evidence on which the jury could
3   reasonably find for the [non-moving party]." <u>Anderson</u>, 477 U.S.
4   at 252.

5          In deciding a summary judgment motion, the court must
6   view the evidence in the light most favorable to the non-moving
7   party and draw all justifiable inferences in its favor.  <u>Id.</u> at
8   255.  "Credibility determinations, the weighing of the evidence,
9   and the drawing of legitimate inferences from the facts are jury
10  functions, not those of a judge . . . ruling on a motion for
11  summary judgment . . . ."  <u>Id.</u>

12          1.   <u>Negligence Claims</u>

13          Martin contends that the City's negligence claims are
14  barred by the statute of limitations.  California's three-year
15  statute of limitations, Cal. Civil Code § 338, governs the state
16  law claims in this case.  <u>See O'Connor v. Boeing N. Am., Inc.</u>,
17  311 F.3d 1139, 1143-44 (9th Cir. 2002) ("CERCLA does not create a
18  federal statute of limitations.  Rather, it retains the state
19  statute of limitations, and establishes a federal standard that
20  governs when delayed discovery of a plaintiff's claims will toll
21  the statute of limitations.")

22          a.   <u>Statute of Limitations</u>

23          The statute of limitations for tort actions "begins to
24  run upon the occurrence of the last event essential to the cause
25  of action."  <u>Wilshire Westwood Assoc. v. Atl. Richfield Co.</u>, 20
26  Cal. App. 4th 732, 739 (2d Dist. 1993).  "If the last element of
27  the cause of action to occur is damage, the statute of
28  limitations begins to run on the occurrence of 'appreciable and

8

actual harm, however uncertain in amount,' that consists of more than nominal damages." S.F. Unified Sch. Dist. v. W.R. Grace & Co., 37 Cal. App. 4th 1318, 1326 (1st Dist. 1995) (citing Davies v. Krasna, 14 Cal. 3d 502, 513-14 (1975)). "The mere breach of duty--causing only nominal damages, speculative harm or the threat of future harm not yet realized--normally does not suffice to create a cause of action." Id. "In actions sounding in negligence, the cause of action matures only when actual damage results from the negligent act." Anthony v. Kelsey-Hayes Co., 25 Cal. App. 3d 442, 447 (2d Dist. 1972).

    The City alleges in its FACC that Martin's negligence resulted in contamination of the Property, adjacent properties, the soils, and groundwater. (FACC ¶ 13.)  When its claims accrued thus turns on when the contamination, or harm to the property, occurred. See Cal. Dep't. of Toxic Substances Control v. Payless Cleaners, 368 F. Supp. 2d 1069, 1084 (E.D. Cal. 2005) (explaining that plaintiff has a viable negligence claim when physical injury occurs); S.F. Unified Sch. Dist., 37 Cal. App. 4th at 1327 (requiring physical injury to state a cause of action for negligence).

    Martin's equipment was in use at the Property from approximately 1964 to 1977. (Stmt. of Undisputed Facts (Docket No. 419.) ¶ 6.)  As a result, any contamination of the Property, adjacent properties, the soils, and groundwater caused by Martin's equipment would have occurred no later than 1977. See CAMSI IV v. Hunter Tech. Corp., 230 Cal. App. 3d 1525, 1534 (6th Dist. 1991) ("If the defendant has caused injury by a series of acts, the orthodox rule suggests an action could be brought

1  within the limitation period running from the last act.").  The
2  statute of limitations on the City's negligence claims therefore
3  commenced in 1977 at the latest.

4       Even if the City did not personally suffer economic
5  injury until it paid money towards investigation of the Property
6  in 2005, the accrual of its negligence claims does not change.
7  "[F]or limitations purposes the harm implicit in a tortious
8  injury to property is harm to the property itself, and thus to
9  any owner of the property once the property has been injured and
10 not necessarily to a particular owner."  Id.  As such, even
11 though "a subsequent owner will not be personally harmed by the
12 tort until he or she becomes the owner," that owner does not
13 "become[] entitled to a new statute of limitations against the
14 tortfeasor."  Id. at 1535 (explaining that this rule advances the
15 repose function of statutes of limitations).  Thus, even if the
16 City was not personally harmed until it paid damages in 2005, it
17 did not thereby become entitled to a new statute of limitations
18 at that time.

19      Although the statute of limitations for the City's
20 negligence claims commenced by 1977, or shortly thereafter, the
21 City did not assert those claims against Martin until it filed
22 its FACC on February 28, 2008.  The City is therefore time-barred
23 from asserting these claims against Martin unless it can show
24 that the commencement of the limitations period was tolled.

25                 b.   Discovery Rule

26      Both parties agree that the discovery rule potentially
27 delays the commencement of the statute of limitations on the
28 City's negligence claims, but erroneously rely on the state, not

federal, discovery rule.  Where alleged damage to property is caused by hazardous substances, CERCLA dictates that if the applicable state statute of limitations provides a commencement date for claims that is earlier than the commencement date set by the statute, CERCLA's commencement date controls.[5]  See 42 U.S.C. § 9658.  In O'Connor v. Boeing North American, Inc., 311 F.3d 1139, 1146 (9th Cir. 2002), the Ninth Circuit held that because the federal discovery rule under CERCLA is more generous than California's discovery rule, it preempts the California rule. Id. at 1146-47; see SPPI-Somersville, Inc. v. TRC Cos., No. Civ. 04-2648 SI, 2009 WL 2390347, at *4 (N.D. Cal. Aug. 3, 2009) (holding that O'Connor dictates that CERCLA's delayed discovery rule applies to determine when the statute of limitations commenced on plaintiff's state law property claims).  "The absence of an underlying CERCLA claim does not preclude application of the federal discovery rule."  O'Connor, 311 F.3d at 1148.

Under the federal discovery rule, the "California limitations period [does] not commence until Plaintiff[] knew or

---

[5]     The statute provides that:

In the case of any action brought under State law for personal injury, or *property damages*, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant . . . if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added).

should have known of [his or her] claim."[1]  <u>Id.</u> at 1146.  "A
plaintiff knows or reasonably should know of a claim when he or
she knows 'both the existence and the cause of his injury.'"  <u>Id.</u>
at 1147 (quoting <u>United States v. Kubrick</u>, 444 U.S. 111, 113
(1979)).  Unlike the California rule, "mere suspicion of the
elements of a claim" is insufficient to commence the limitations
period.  <u>Id.</u> at 1147-48; <u>see</u> <u>Whitlock v. Pepsi Ams.</u>, No. Civ.
08-02742 SI, 2009 WL 3415783, at *3 (N.D. Cal. Oct. 21, 2009),
<u>aff'd sub nom.</u> <u>Dalton v. Pepsi Ams.</u>, 440 F. App'x 594 (9th Cir.
2011) (distinguishing the California rule, where "plaintiff
discovers a cause of action when he is on inquiry notice, defined
as reason to suspect a factual basis for a cause of action,
rather than actual knowledge thereof," from the federal rule,
which "requires more than suspicion alone").  Summary judgment is
therefore improper unless the City knew or should have known more
than three years before filing its claims that Martin was the
cause of its injuries.

     The court must undertake a two-part analysis to
determine whether the City reasonably should have known of its
claim.

>      First, we consider whether a reasonable person in
>      Plaintiffs' situation would have been expected to inquire
>      about the cause of his or her injury.  Second, if the
>      plaintiff was on inquiry notice, we must next determine
>      whether [an inquiry] would have disclosed the nature and
>      cause of plaintiff's injury so as to put him on notice of

---

[1]      In comparison, the California discovery rule delays the
commencement of the statute of limitations period until the
"plaintiff either (1) actually discovered his injury and its
negligent cause or (2) could have discovered injury and cause
through the exercise of reasonable diligence."  <u>CAMSI IV</u>, 230
Cal. App. 3d at 1536 (quoting <u>Leaf v. City of San Mateo</u>, 104 Cal.
App. 3d 398, 407 (1st Dist. 1980)).

his claim.  The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry.

O'Connor, 311 F.3d at 1150 (alteration in original) (internal citations and quotation marks omitted).

The parties dispute whether the City could have known of its injury and the causes of that injury more than three years before filing its cross-complaint on February 29, 2008.  Martin argues that the City knew, or should have known, by July 2003 of both its injury and the cause because of the RWQCB correspondence it received by that date.  The City contends that it could not have discovered its claims against Martin before August 22, 2007, when the plaintiffs filed their SAC, naming Martin as a defendant.

The court finds that the City was on inquiry notice no later than the date the Lewises filed their initial Complaint. By then, the City had been copied on correspondence reporting that PCE had been found below a bend in its sewer line.  (Martin Ex. 7; Resp. to Martin's Statement of Undisputed Facts ¶ 18.) More importantly, the Complaint itself alleged that PCE had been found on the Property and adjacent property and that the City's sewer system contributed to the PCE leakage.  (Compl. ¶¶ 19, 21, 23, 26.)  These allegations would have again alerted the City of a potential injury to its property.  A reasonable person with knowledge of contamination on his property would be expected to make a further investigation about the source.  See SPPI-Somersville, Inc., 2009 WL 2390347, at *4 (discovery of contamination on property would induce a reasonable person to make further investigation as to whether one of the two adjacent

13

1   landfills was the cause).  This is because this kind of

2   contamination is the kind of injury likely to stem from

3   wrongdoing, unlike cancer, for example, which has a multitude of

4   possible origins, many of which are not tortious.

5           The next step in the O'Connor analysis is to determine

6   whether a reasonable inquiry would have put the City on notice of

7   its claims more than three years before it filed them.  See

8   O'Connor, 311 F.3d at 1155.  The January 15, 2003, RWQCB letter

9   explained that the dry cleaning machines Russell used may "have

10  significantly contributed to PCE releases from the facility."

11  (Martin Ex. 5.)  Such older machines "used substantially more

12  PCE" than the latest machines do, and the "[i]ncreased PCE usage

13  require[d] more frequent solvent deliveries and increase[d]

14  chances for discharges associated with spills and leaks."  (Id.)

15  The letter also noted that Russell admitted that "he discharged

16  PCE-laden wastewater to the sewers" and that "pipes shift after

17  installation and can separate at joints releasing PCE."  (Id.)

18  The cumulative effect of these statements is to establish a

19  significant connection between the PCE contamination on the

20  Property, the manufacturer of the dry cleaning equipment used at

21  the Property, and PCE contamination on the City's property.  See

22  Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 208 (2d Cir.

23  2002) (analyzing letter sent generally to "concerned citizens,"

24  as well as news articles, in determining if § 9685's "reasonably

25  should have known standard" is met).  Thus, a basic review by the

26  City of the RWQCB documents would have given it knowledge of its

27  claims.  See Bibeau v. Pac. Nw. Research Found. Inc., 188 F.3d

28  1105, 1108 (9th Cir. 1999) ("The plaintiff must be diligent in

                                14

discovering the critical facts . . . [and] will be barred from bringing his claim after the running of the statute of limitations, if he should have known in the exercise of due diligence."); Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d 573, 579 (6th Cir. 1987) ("[T]he asserted actual knowledge of plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning accrual of their right to sue.").

The City points to the slow pace of this litigation, precipitated by extended stays and a focus on settlement, as the chief obstacle to discovering its claims against Martin.  It also suggests that a claimant in its position--having never owned the dry cleaning facility allegedly at the source of the contamination--would have a difficult time obtaining the information needed to support it claims.  See Adobe Lumber, Inc. v. Hellman, No. Civ. 05-1510 WBS PAN, 2008 WL 4615285, at *5 (E.D. Cal. Oct. 17, 2008) (noting that for the owner of a shopping center, "information concerning the practice of discharging wastewater into the floor drain and the identities of the [dry cleaning] equipment manufacturer and PCE delivery company, concern information that a landlord in the plaintiff's position would not ordinarily possess absent some disclosure by another").

As just explained, however, the City already had the documents containing the facts needed to support its claim before litigation even commenced.  Cf. Whitlock, 2009 WL 3415783, at *6 (finding it "at least plausible that the plaintiffs remained unaware of the health risks caused by the contamination for a

1  long period of time" when the asserted basis of their knowledge

2  of the contamination underlying their claims was based largely on

3  widespread media coverage).  As to the exact identity of the

4  manufacturer involved, a reasonable search might have begun by

5  looking up the term "Martinizing," used in the name of the

6  businesses belonging to two of the dry cleaning operator

7  defendants, given the obvious connection between the dry cleaning

8  facility and the PCE leakage revealed in the RWQCB letters.  See

9  Dubose v. Kan. City S. Ry. Co., 729 F.2d 1026, 1031 (5th Cir.

10  1984) ("When a plaintiff may be charged with awareness that his

11  injury is connected to some cause should depend on factors

12  including how many possible causes exist.").  Such a basic step

13  would not have been verboten even once litigation commenced.

14       Crucially, even if the name "Martinizing" was not

15  investigated, basic discovery was available.  In this case, the

16  parties engaged in written discovery before the initial

17  Settlement Stay.  (King Decl. ¶ 5.)  Had the City asked the

18  various operators of the dry cleaning facility the name of the

19  manufacturer of the equipment each used, it would have been able

20  to amend its cross-complaint to include the identified company or

21  companies more than three years before it actually did so.  Cf.

22  Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005)

23  (noting that there is a distinct difference between "between

24  ignorance of the identity of the defendant and ignorance of the

25  cause of action" because of "the commonsense assumption that once

26  the plaintiff is aware of the latter, he normally has sufficient

27  opportunity, within the applicable limitations period, to

28  discover the identity of the former" (quoting Norgart v. Upjohn

16

1  <u>Co.</u>, 21 Cal. 4th 383, 399 (1999)) (internal quotation marks
2  omitted)); <u>Simmons v. S. Cent. Skyworker's, Inc.</u>, 936 F.2d 268,
3  270 (6th Cir. 1991) (adopting the reasoning behind the principle
4  that a statute of limitations commences when a plaintiff can
5  identify contraceptives as the cause of the illness, rather than
6  is tolled until a plaintiff can identify as defendants the
7  manufacturers of specific ingredients or substances contained in
8  the contraceptives).  The fact that the parties were focused on
9  settlement does not excuse a party on inquiry notice from
10 "knowledge of facts that he would have discovered through
11 inquiry." <u>O'Connor</u>, 311 F.3d at 1150.  To hold otherwise would
12 encourage injured parties to forswear basic investigation that
13 would reveal the identity of defendants in order to delay the
14 commencement of the statute of limitations period indefinitely.

15         The City admits that it received the correspondence
16 from the RWQCB. (<u>See</u> Response to Martin's Stmt of Undisputed
17 Facts ¶¶ 15, 17, 19.)  It presents no conflicting evidence to
18 show that a reasonable inquiry based on that correspondence and
19 basic discovery would not have revealed that Martin caused its
20 injuries.  The only reasonable inference to be drawn from the
21 submitted evidence is that the City should have known of its
22 claims against Martin at or soon after the time the original
23 complaint was filed in December 2003.  Accordingly, because no
24 genuine issue of material fact remains with respect to the
25 timeliness of the City's negligence claims against Martin, the
26 Court will grant Martin's motion for summary judgment on those
27 claims.

28             2.   <u>Strict Products Liability Claim</u>

17

1    Martin again alleges that the City's strict products

2  liability claim is time-barred.  The City concedes that its claim

3  is untimely under California's three-year statute of limitations

4  and thus relies on the discovery rule to toll the limitations

5  period.  For the same reasons discussed above, there remain no

6  genuine issues of material fact as to whether the City should

7  have known of its claims against Martin more than three years

8  before filing its FACC.  Accordingly, the court will grant

9  Martin's motion for summary judgment on the City's strict

10  products liability claim.

11           3.   Davis Municipal Code Section 33.00 Claim

12    Chapter 33.03 of the Davis Municipal Code ("Code"),

13  entitled "Discharge Requirements," regulates the release of

14  contributions into the City's sewer system.  The City alleges

15  that Martin violated two of the Code's discharge provisions.  The

16  first provision prohibits "any user to contribute or cause to be

17  contributed, directly or indirectly, any pollutant or wastewater

18  which will interfere with the operation or performance of the"

19  treatment works.  Davis, Cal., Municipal Code §

20  33.03.050(a)(2012).  The second provision forbids any "user" to

21  contribute "[a]ny wastewater, which causes a hazard to human life

22  or creates a public nuisance."  Id. § 33.03.050(b)(12).

23    First, the City concedes that its Code claim is

24  untimely under California's three-year statute of limitations and

25  thus relies on the discovery rule to toll the limitations period.

26  For the same reasons discussed above, there remain no genuine

27  issues of material fact as to whether the City should have known

28  of its claims against Martin more than three years before filing

18

1   its FACC.  Accordingly, the City's Code claim is time-barred.

2          Second, even if the City's claim were timely, the court
3   finds that the Code does not apply to Martin because it is not a
4   "user."  For the ordinance's discharge provisions to govern any
5   actor, it must initially qualify as a "user."  The Code defines
6   "user" as "any person who contributes, causes or permits the
7   contribution of wastewater into the city's" treatment works.  <u>Id.</u>
8   § 33.03.030.

9          In California, "[t]he construction of an ordinance is a
10  pure question of law for the court, and the rules applying to
11  construction of statutes apply equally to ordinances."  <u>H.N. &</u>
12  <u>Frances C. Berger Found. v. City of Escondido</u>, 127 Cal. App. 4th
13  1, 12 (2005)(4th Dist. 2005).  "'Where terms are not defined
14  within a statute, they are accorded their plain and ordinary
15  meaning . . . .'"  <u>Hinds Investments, L.P. v. Angioli</u>, 654 F.3d
16  846, 850 (9th Cir. 2011) (quoting <u>Greewood v. CompuCredit Corp.</u>,
17  615 F.3d 1204, 1208 (9th Cir. 2010)).  "Where the words of a
18  statute do not have a 'plain meaning,' statutory construction is
19  necessary."  <u>City of Modesto Redev. Agency v. Superior Court</u>, 119
20  Cal. App. 4th 28, 36 (1st Dist. 2004) ("<u>City of Modesto</u>").

21         The Code does not define the words "contributes,"
22  "causes," or "permits" in its definition of "user."  Nor does the
23  plain meaning of those terms indicate who qualifies as a "user."
24  In <u>City of Modesto</u>, a California court of appeal considered the
25  scope of the California Polanco Redevelopment Act ("Polcano
26  Act"), which imposes the costs of environmental remediation on
27  any "[r]esponsible party."  119 Cal. App. 4th at 34-35.  The
28  Polcano Act defines a "responsible party" as one "who has caused

1 or permitted, causes or permits, or threatens to cause or permit
2 any waste to be discharged or deposited . . . ."  Id. at 35
3 (quoting Porter-Cologne Water Quality Control Act ("Porter-
4 Cologne Act"), Cal. Water Code § 13304(a)) (Porter-Cologne Act
5 supplies the definition of "responsible party" for Polcano Act).
6 The court explained that this statutory language "does not
7 indicate whether 'cause' refers to a party who was directly
8 involved with a discharge, to anyone whose actions were a
9 substantial factor in causing the discharge, or even, as the city
10 argued below, to anyone who places a hazardous substance into the
11 chain of commerce."  Id. at 37.   In its use of the same words
12 "causes" and "permits," the Code likewise does not plainly
13 dictate what extent of involvement with wastewater disposal a
14 party must show to have "contribut[ed], cause[ed] or
15 permit[ted]."   Therefore, construction of these terms is
16 required.

17        The City argues that Martin qualifies as a "user"
18 because it "contribute[d], cause[d] or permit[ted]" wastewater
19 simply by enabling the creation of waste by manufacturing and
20 selling its equipment and including instructions indicating that
21 wastewater could be discharged into a sewer.[8]  This conclusion
22 would require the court to give the terms of the ordinance a
23 broad construction, such that a party could be liable under the
24 discharge provisions even if it did not actively participate in
25 the production or discharge of waste.

---

26        [8]   The City states that Martin "contributed to or caused
27 contaminated discharges into the sewer system by making and
selling the equipment used on the Property, and by instructing
operators that PCE-laden wastewater could be discharged into the
28 sewer system."  (Opp'n to Mot. Summ. J. 16:6-9.)

The structure of the ordinance does not permit such a broad reading.  The objective of the Discharge Requirements chapter is to prevent the release of pollutants into the city wastewater system that will jeopardize the functioning of the system or intermingle without adequate treatment with the environment.  Municipal Code § 33.03.010.  It imposes a variety of discharge prohibitions and provides for the development of effluent limitations for "users" who contribute any of the prohibited substances.  Id. § 33.03.050 (a)–(c).  It requires all "users" to pay fees to use the wastewater disposal system, id. § 33.03.130, and provides for enforcement measures against violators.  Id. §§ 33.03.350, 33.03.370.

Rather, the scheme that emerges from the Discharge Requirements is one concerned with the person or entity actively discharging waste.  The provisions, concerned with the effects of inappropriate discharges, are structured to control the actor who directly causes the pollutants to enter into the system; that is, the actor who pays the fees to use the system and has it within his control to allow for the physical release of pollutants.  A manufacturer like Martin, who provides only the equipment that produces a waste product or proposes different manners of disposing of wastewater, has no control over whether pollutants are actually released into the sewer system.[9]

_____

[9]    The Ninth Circuit held last year that dry cleaning equipment manufacturers do not make the required "affirmative acts or instructions" that support a nuisance finding when "their instruction manuals state[] that waste water from their machines 'must flow into an open drain,' 'may be drained into a container or piped directly to a floor drain,' or 'should be piped into an open sewer.'"  Hinds Invs., L.P. v. Angioli, 445 F. App'x 917, 919–20.

1    To determine the scope of the similar language in the
2 Polcano Act, the City of Modesto court turned to the common law
3 of nuisance, with which it found the underlying Porter-Cologne
4 Act to be "harmonious."  119 Cal. App. 4th at 37.  Considering
5 the principles of nuisance law, the court found that only "those
6 who took affirmative steps directed toward the improper discharge
7 of solvent wastes" would be liable under the statute's "causes or
8 permits" language.  Id. at 43.

9    Along with certain other specifically enumerated
10 prohibited substances, the Code makes unlawful the release of
11 "[a]ny wastewater which causes a hazard to human life or creates
12 a public nuisance."  Municipal Code § 33.03.050(b)(12).  Given
13 this indication that the Discharge Provisions are meant to
14 prevent discharges rising to the level of nuisance, it is
15 reasonable to construe the "contributes, causes or permits"
16 language in the Code along general nuisance principles to require
17 a more definite causal role for a "user," as the City of Modesto
18 court did and as the structure of the discharge requirements
19 dictates.  See City of Modesto, 119 Cal. App. 4th at 39 (noting
20 that the "law of nuisance is not intended to serve as a surrogate
21 for ordinary products liability").

22    Additionally, the Ninth Circuit has interpreted the
23 phrase "has contributed or is contributing" in the Resource
24 Conservation and Recovery Act of 1976 ("RCRA"), a statute
25 allowing for suit against dischargers of hazardous waste.  See
26 Hinds Investments, L.P., 654 F.3d at 869-76.  The RCRA defined
27 the scope of its prohibition on "contributing" to waste disposal
28 by listing such actions as "handling, storage, treatment,

22

1   transportation, or disposal" as ones that count as contributions.

2   Id. at 851 (quoting RCRA, 42 U.S.C. § 6972(a)(1)(B)).  Although

3   the Code does not include the same detailed description of what

4   counts as a contribution, the common meanings of the words

5   "contributes," "causes," and "permits" also plainly "require[] a

6   more active role with a more direct connection to the waste,"

7   such as handling or actually disposing of the waste.  Id. at 851;

8   see Sycamore Indus. Park Assocs. v. Ericsson, Inc., 546 F.3d 847,

9   854 (7th Cir. 2008) ("By definition, the phrase 'has contributed

10  or is contributing' requires affirmative action.").  The

11  requirement that a "user" "contributes, causes or permits" is one

12  of agency and of control.  It cannot be stretched so thin as to

13  implicate those with only the most attenuated connection to the

14  act of waste contribution.

15          The court thus finds that to qualify as a "user" under

16  the Code requires an affirmative action or some degree of

17  control.  There is no evidence that Martin had control over waste

18  disposal at the Property at any time and the City does not allege

19  any more active participation than that Martin made and sold the

20  equipment used at the Property and provided instructions that

21  wastewater could be discharged to the sewer system.  Cf. Hinds

22  Invs., L.P., 445 F. App'x at 919-20 (holding that waste disposal

23  recommendations accompanying dry cleaning equipment do not rise

24  to affirmative acts or instructions that could supporting a

25  finding of nuisance).  As a matter of law, the Discharge

26  Provisions do not apply to Martin and thus the court will grant

27  Martin's motion for summary judgment on the City's Code claim for

28

23

1  this reason as well.[10]

2          4.   Negligence Per Se Claim

3          To prevail on a negligence per se claim, a plaintiff

4  must prove "that (1) the defendant violated a statute or

5  regulation, (2) the violation caused the plaintiff's injury, (3)

6  the injury resulted from the kind of injury the statute or

7  regulation was designed to prevent, and (4) the plaintiff was a

8  member of the class of persons it was intended to protect." Cal.

9  Dep't. of Toxic Substances Control, 368 F. Supp. 2d at 1084

10 (citing Alejo v. City of Alhambra, 75 Cal. App. 4th 1180, 1184-85

11 (2d Dist. 1999)).

12         As explained in section III.A.1, the City's negligence

13 per se claim is time-barred.  Even if it were not, Martin would

14 be entitled to summary judgment on the City's negligence per se

15 claim predicated on the Davis Municipal Code because the court

16 has granted Martin summary judgment on the Code claim.[11]

17         IT IS THEREFORE ORDERED that Martin's motion for

18 summary judgment on the City's claims against it for negligence,

19 negligence per se, strict products liability, and violation of

20 Davis Municipal Code Chapter 33.00 be GRANTED.

21 DATED:   October 2, 2012

22                          WILLIAM B. SHUBB
                            UNITED STATES DISTRICT JUDGE
23

24     [10]   The parties present conflicting evidence as to whether
25 a precursor ordinance to Chapter 33 existed at the time Martin's
   equipment was in use at the Property.  Because the City's Code
26 claim is time-barred and Martin does not qualify as a user under
   the statute, the court need not decide this issue.
27     [11]   Because the City's negligence per se claim is time-
   barred, later determination of the City's CERCLA claims will not
28 affect the court's grant of summary judgment on the negligence
   per se claim.

                               24