1

2

3

4

5

6

7

8                        UNITED STATES DISTRICT COURT

9                       EASTERN DISTRICT OF CALIFORNIA

10
                                ----oo0oo----
11
CHARLES H. LEWIS and JANE W.      NO. CIV. 2:03-2646 WBS CKD
12 LEWIS,

13          Plaintiffs,            MEMORANDUM AND ORDER RE: MOTION
                                   FOR SUMMARY JUDGMENT OR
14      v.                         ALTERNATIVELY, PARTIAL SUMMARY
                                   JUDGMENT
15 ROBERT D. RUSSELL; IRENE
RUSSELL; BEN J. NEWITT; the
16 Estate of PHILLIP NEWITT,
Deceased; JUNG HANG SUH; SOO
17 JUNG SUH; JUNG K. SEO; THE DAVIS
CENTER, LLC; MELVIN R. STOVER,
18 individually and as trustee of
the Stover Family Trust; EMILY
19 A. STOVER, individually and as
trustee of the Stover Family
20 Trust; STOVER FAMILY TRUST;
RICHARD ALBERT STINCHFIELD,
21 individually and as successor
trustee of the Robert S.
22 Stinchfield Separate Property
Revocable Trust, and as trustee
23 of the Barbara Ellen Stinchfield
Testamentary Trust; ROBERT S.
24 STINCHFIELD SEPARATE PROPERTY
REVOCABLE TRUST; THE BARBARA
25 ELLEN STINCHFIELD TESTAMENTARY
TRUST; WORKROOM SUPPLY, INC., a
26 California corporation; SAFETY-
KLEEN CORPORATION, a California
27 corporation; the CITY OF DAVIS;
JENSEN MANUFACTURING COMPANY;
28 VIC MANUFACTURING COMPANY;

                                    1

1  MARTIN FRANCHISES INC., aka/dba
   MARTINIZING DRY CLEANING,
2
              Defendants.
3  ─────────────────────────────────
4  AND RELATED COUNTER, CROSS,
   AND THIRD PARTY CLAIMS.
5  ─────────────────────────────────/

6
                    ----oo0oo----
7
8          Charles H. Lewis and Jane W. Lewis (the "Lewises")

   brought this action pursuant to the Comprehensive Environmental
9
   Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.
10
   §§ 9601-9675, for recovery of costs incurred to remove hazardous
11
   substances from a piece of real property located in Davis,
12
   California ("Property").  Presently before the court is defendant
13
   Martin Franchises, Inc.'s ("Martin"), motion for summary judgment
14
   or alternatively, partial summary judgment, on cross-claimant
15
   City of Davis's ("City") First Amended Cross-Complaint ("FACC"),
16
   pursuant to Federal Rule of Civil Procedure 56.
17
   I.   Factual and Procedural Background
18
           This multi-party litigation concerns the contamination
19
   of the Property with tetrachloroethene ("PCE"), a chemical
20
   allegedly released through the operation of a dry cleaning
21
   facility on the Property.  (Second Am. Compl. ("SAC") ¶ 40
22
   (Docket No. 197).)  The parties include the alleged owners and
23
   managers of the Property during the relevant time period; the
24
   City, which allegedly contributed to the PCE contamination; the
25
   operators of the dry cleaning facility; the entities that
26
   supplied and removed the PCE; and the manufacturers of the
27
   equipment used in dry cleaning operations at the Property.  (Id.
28

                              2

¶¶ 7-25, 44; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2 (Docket No. 198).)  Since the filing of the original complaint in 2003, the parties have filed numerous counterclaims, cross-claims, and third-party claims for contribution pursuant to 42 U.S.C. § 9613(f).

        In 2001, the City provided the California Regional Water Quality Control Board, Central Valley Region ("RWQCB") with information that a pipe emerging from Lewis Cleaners was discharging water into a broken pipe on the ground and that water samples revealed elevated levels of PCE.  (Martin's Req. for Judicial Notice ("Martin") Ex. 1 (Docket No. 409).)

        The RWQCB then issued a Cleanup and Abatement Order ("Abatement Order") on October 2, 2002, instructing the current and past owners and operators of the Property to investigate the extent of the PCE contamination and to prepare work plans to address the contamination.  (SAC ¶ 42.)  The Abatement Order stated that "[t]wo municipal wells are located within the vicinity of the site," but also reported that "VOCs [volatile organic compounds] have not been detected in any City municipal wells."  (Martin Ex. 2.)  The City received a copy of the Abatement Order.  (See Resp. to Martin's Stmt. of Undisputed Facts ¶ 11 (Docket No. 419).)

        On November 1, 2002, defendant Robert Russell, who operated a dry cleaning business on the property from 1964 to 1971, petitioned his designation as a discharger in the Abatement Order. (Martin Ex. 4.)  In his petition and accompanying declaration, Russell admitted that he installed the dry cleaning equipment used in his business and that, during his

1  "Russell's One Hour Martinizing" operations, he discharged the

2  wastewater that the equipment generated into the City sewer

3  system.  (<u>Id.</u>)

4       The RWQCB dismissed Russell's petition on January 15,

5  2003.  (<u>Id.</u> Ex. 5.)  On January 17, 2003, the RWQCB called for

6  further investigation to determine if several City wells might be

7  contaminated with PCE.  (<u>Id.</u> Ex. 6.)  It reported that PCE had

8  been found below a bend in the City's sewer line on July 2, 2003.

9  (<u>Id.</u> Ex. 7.)  The City received copies of all these documents.

10 (<u>See</u> Resp. to Martin's Statement of Undisputed Facts ¶¶ 15, 17,

11 19.)

12      The Lewises filed the Complaint in this action on

13 December 9, 2003, naming the City as a defendant.  (<u>See</u> Compl.

14 (Docket No. 1).)  In their original Complaint, plaintiffs alleged

15 that "gaps and cracks" in the City's sewer system permitted the

16 release of PCE into the Property and adjacent properties.  (<u>Id.</u> ¶

17 26.)  They also alleged that defendant dry cleaner operators

18 Robert Russell and the Newitts were responsible, in part, for the

19 leakage of PCE, identifying their respective businesses as

20 "Russell's One Hour Martinizing" and "Newitt's One Hour

21 Martinizing."  (<u>Id.</u> ¶¶ 7-9, 19-21.)

22      In November 2005, the City made two payments of

23 $20,000 each toward the parties' joint investigation of the

24 alleged contamination as part of the mediation process.  (King

25 Decl. ¶ 10.)  On August 22, 2007, plaintiffs filed their SAC and

26 brought Martin into the litigation for the first time as a

27 defendant.  (<u>See</u> SAC ¶ 25.)  The City named Martin as a cross-

28 defendant when it filed its FACC on February 29, 2008.  (<u>See</u> FACC

4

¶ 21 (Docket No. 229).)   The FACC asserted claims against Martin for recovery under CERCLA § 107(a), contribution under CERCLA § 113(f), strict products liability, negligence, negligence per se, public nuisance under California Civil Code Section 713, public nuisance under Davis Municipal Code Chapter 23.0.0, violation of Davis Municipal Code Chapter 33.0.0, contribution, equitable indemnity, declaratory relief under CERCLA § 113(g), and declaratory relief under 28 U.S.C. § 2201.

Martin filed its motion for summary judgment on all of the City's cross-claims on August 17, 2012.  (Docket No. 409.)  The court here considers Martin's request for summary judgment only as to City's claims for negligence, negligence per se, strict products liability, and violation of Davis Municipal Code Chapter 33.0.0.  The following discussion is limited to those claims.

II.  Requests for Judicial Notice/Evidentiary Objections

Martin requests that the court take judicial notice of a number of documents in this case.  Because this is a motion for summary judgment, the court may consider the documents without taking judicial notice of them.  See Century 21 Real Estate LLC v. All Prof'l Realty, Inc., No. Civ. 2:10-2751 WBS GGH, 2012 WL 3260452, at *10 (E.D. Cal. Aug. 8, 2012).

On a motion for summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  "[T]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the

requirements of Federal Rules of Civil Procedure 56." <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting <u>Block v. City of Los Angeles</u>, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotation marks omitted).  Even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial.  <u>See</u> <u>Burch v. Regents of the Univ. of Cal.</u>, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006).

Martin raises twelve objections to portions of two declarations the City submitted on the grounds of lack of foundation, inadmissible hearsay, the best evidence rule, and that the statements are conclusory.[1]

Statements based on speculation or improper legal conclusions, statements made without personal knowledge, and argumentative statements are not facts and can be considered only as arguments, not as facts, on a motion for summary judgment. Instead of challenging the admissibility of this evidence, lawyers should challenge its sufficiency.  Objections on any of these grounds are superfluous, and the court overrules them.

In the interest of brevity, and as Martin is aware of the substance of its remaining objections and the grounds asserted in support of them, the court will not review the substance or grounds of the individual objections here.  Martin's objections are all overruled.

---

[1]   Martin also objects to the Declaration of Ann Waid as untimely because it was filed four minutes late.  Notwithstanding the questionable merit of this objection, the court does not rely on the declaration and thus overrules the objection.

1  III.        <u>Analysis</u>

2       A.    <u>Summary Judgment</u>

3              Summary judgment is proper "if the movant shows that

4  there is no genuine dispute as to any material fact and the

5  movant is entitled to judgment as a matter of law."  Fed. R. Civ.

6  P. 56(a).[2]  A material fact is one that could affect the outcome

7  of the suit, and a genuine issue is one that could permit a

8  reasonable jury to enter a verdict in the non-moving party's

9  favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248

10 (1986).  The party moving for summary judgment bears the initial

11 burden of establishing the absence of a genuine issue of material

12 fact and can satisfy this burden by presenting evidence that

13 negates an essential element of the non-moving party's case.

14 <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

15 Alternatively, the moving party can demonstrate that the

16 non-moving party cannot produce evidence to support an essential

17 element upon which it will bear the burden of proof at trial.

18 <u>Id.</u>

19             Once the moving party meets its initial burden, the

20 burden shifts to the non-moving party to "designate 'specific

21 facts showing that there is a genuine issue for trial.'"  <u>Id.</u> at

22 324 (quoting then-Fed. R. Civ. P. 56(e)).  To carry this burden,

23 the non-moving party must "do more than simply show that there is

24 some metaphysical doubt as to the material facts."  <u>Matsushita</u>

25 <u>Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

26 ─────────────────

27       [2]   Federal Rule of Civil Procedure 56 was revised and
   rearranged effective December 1, 2010.  However, as stated in the
   Advisory Committee Notes to the 2010 Amendments to Rule 56,
28 "[t]he standard for granting summary judgment remains unchanged."

1   "The mere existence of a scintilla of evidence . . . will be

2   insufficient; there must be evidence on which the jury could

3   reasonably find for the [non-moving party]." Anderson, 477 U.S.

4   at 252.

5           In deciding a summary judgment motion, the court must

6   view the evidence in the light most favorable to the non-moving

7   party and draw all justifiable inferences in its favor. Id. at

8   255.  "Credibility determinations, the weighing of the evidence,

9   and the drawing of legitimate inferences from the facts are jury

10  functions, not those of a judge . . . ruling on a motion for

11  summary judgment . . . ." Id.

12          1.   Negligence Claims

13          Martin contends that the City's negligence claims are

14  barred by the statute of limitations.  California's three-year

15  statute of limitations, Cal. Civil Code § 338, governs the state

16  law claims in this case. See O'Connor v. Boeing N. Am., Inc.,

17  311 F.3d 1139, 1143-44 (9th Cir. 2002) ("CERCLA does not create a

18  federal statute of limitations.  Rather, it retains the state

19  statute of limitations, and establishes a federal standard that

20  governs when delayed discovery of a plaintiff's claims will toll

21  the statute of limitations.")

22          a.   Statute of Limitations

23          The statute of limitations for tort actions "begins to

24  run upon the occurrence of the last event essential to the cause

25  of action." Wilshire Westwood Assoc. v. Atl. Richfield Co., 20

26  Cal. App. 4th 732, 739 (2d Dist. 1993).  "If the last element of

27  the cause of action to occur is damage, the statute of

28  limitations begins to run on the occurrence of 'appreciable and

8

actual harm, however uncertain in amount,' that consists of more than nominal damages." <u>S.F. Unified Sch. Dist. v. W.R. Grace & Co.</u>, 37 Cal. App. 4th 1318, 1326 (1st Dist. 1995) (citing <u>Davies v. Krasna</u>, 14 Cal. 3d 502, 513-14 (1975)).  "The mere breach of duty--causing only nominal damages, speculative harm or the threat of future harm not yet realized--normally does not suffice to create a cause of action." <u>Id.</u>  "In actions sounding in negligence, the cause of action matures only when actual damage results from the negligent act." <u>Anthony v. Kelsey-Hayes Co.</u>, 25 Cal. App. 3d 442, 447 (2d Dist. 1972).

The City alleges in its FACC that Martin's negligence resulted in contamination of the Property, adjacent properties, the soils, and groundwater. (FACC ¶ 13.)  When its claims accrued thus turns on when the contamination, or harm to the property, occurred.  <u>See</u> <u>Cal. Dep't. of Toxic Substances Control v. Payless Cleaners</u>, 368 F. Supp. 2d 1069, 1084 (E.D. Cal. 2005) (explaining that plaintiff has a viable negligence claim when physical injury occurs); <u>S.F. Unified Sch. Dist.</u>, 37 Cal. 4th at 1327 (requiring physical injury to state a cause of action for negligence).

Martin's equipment was in use at the Property from approximately 1964 to 1977. (Stmt. of Undisputed Facts (Docket No. 419.) ¶ 6.)  As a result, any contamination of the Property, adjacent properties, the soils, and groundwater caused by Martin's equipment would have occurred no later than 1977.  <u>See</u> <u>CAMSI IV v. Hunter Tech. Corp.</u>, 230 Cal. App. 3d 1525, 1534 (6th Dist. 1991) ("If the defendant has caused injury by a series of acts, the orthodox rule suggests an action could be brought

9

within the limitation period running from the last act."). The statute of limitations on the City's negligence claims therefore commenced in 1977 at the latest.

Even if the City did not personally suffer economic injury until it paid money towards investigation of the Property in 2005, the accrual of its negligence claims does not change. "[F]or limitations purposes the harm implicit in a tortious injury to property is harm to the property itself, and thus to any owner of the property once the property has been injured and not necessarily to a particular owner." Id.  As such, even though "a subsequent owner will not be personally harmed by the tort until he or she becomes the owner," that owner does not "become[] entitled to a new statute of limitations against the tortfeasor." Id. at 1535 (explaining that this rule advances the repose function of statutes of limitations).  Thus, even if the City was not personally harmed until it paid damages in 2005, it did not thereby become entitled to a new statute of limitations at that time.

Although the statute of limitations for the City's negligence claims commenced by 1977, or shortly thereafter, the City did not assert those claims against Martin until it filed its FACC on February 28, 2008.  The City is therefore time-barred from asserting these claims against Martin unless it can show that the commencement of the limitations period was tolled.

b.  <u>Discovery Rule</u>

Both parties agree that the discovery rule potentially delays the commencement of the statute of limitations on the City's negligence claims, but erroneously rely on the state, not

10

federal, discovery rule.  Where alleged damage to property is caused by hazardous substances, CERCLA dictates that if the applicable state statute of limitations provides a commencement date for claims that is earlier than the commencement date set by the statute, CERCLA's commencement date controls.[5]  See 42 U.S.C. § 9658.  In O'Connor v. Boeing North American, Inc., 311 F.3d 1139, 1146 (9th Cir. 2002), the Ninth Circuit held that because the federal discovery rule under CERCLA is more generous than California's discovery rule, it preempts the California rule.  Id. at 1146-47; see SPPI-Somersville, Inc. v. TRC Cos., No. Civ. 04-2648 SI, 2009 WL 2390347, at *4 (N.D. Cal. Aug. 3, 2009) (holding that O'Connor dictates that CERCLA's delayed discovery rule applies to determine when the statute of limitations commenced on plaintiff's state law property claims).  "The absence of an underlying CERCLA claim does not preclude application of the federal discovery rule."  O'Connor, 311 F.3d at 1148.

Under the federal discovery rule, the "California limitations period [does] not commence until Plaintiff[] knew or

---

[5]      The statute provides that:

In the case of any action brought under State law for personal injury, or property damages, which are caused or contributed to by exposure to any hazardous substance, or pollutant or contaminant . . . if the applicable limitations period for such action (as specified in the State statute of limitations or under common law) provides a commencement date which is earlier than the federally required commencement date, such period shall commence at the federally required commencement date in lieu of the date specified in such State statute.

42 U.S.C. § 9658(a)(1) (emphasis added).

11

should have known of [his or her] claim."[1]  Id. at 1146.  "A plaintiff knows or reasonably should know of a claim when he or she knows 'both the existence and the cause of his injury.'"  Id. at 1147 (quoting United States v. Kubrick, 444 U.S. 111, 113 (1979)).  Unlike the California rule, "mere suspicion of the elements of a claim" is insufficient to commence the limitations period.  Id. at 1147-48; see Whitlock v. Pepsi Ams., No. Civ. 08-02742 SI, 2009 WL 3415783, at *3 (N.D. Cal. Oct. 21, 2009), aff'd sub nom. Dalton v. Pepsi Ams., 440 F. App'x 594 (9th Cir. 2011) (distinguishing the California rule, where "plaintiff discovers a cause of action when he is on inquiry notice, defined as reason to suspect a factual basis for a cause of action, rather than actual knowledge thereof," from the federal rule, which "requires more than suspicion alone").  Summary judgment is therefore improper unless the City knew or should have known more than three years before filing its claims that Martin was the cause of its injuries.

The court must undertake a two-part analysis to determine whether the City reasonably should have known of its claim.

> First, we consider whether a reasonable person in Plaintiffs' situation would have been expected to inquire about the cause of his or her injury.  Second, if the plaintiff was on inquiry notice, we must next determine whether [an inquiry] would have disclosed the nature and cause of plaintiff's injury so as to put him on notice of

---

[1]    In comparison, the California discovery rule delays the commencement of the statute of limitations period until the "plaintiff either (1) actually discovered his injury and its negligent cause or (2) could have discovered injury and cause through the exercise of reasonable diligence."  CAMSI IV, 230 Cal. App. 3d at 1536 (quoting Leaf v. City of San Mateo, 104 Cal. App. 3d 398, 407 (1st Dist. 1980)).

his claim.  The plaintiff will be charged with knowledge of facts that he would have discovered through inquiry. O'Connor, 311 F.3d at 1150 (alteration in original) (internal citations and quotation marks omitted).

The parties dispute whether the City could have known of its injury and the causes of that injury more than three years before filing its cross-complaint on February 29, 2008.  Martin argues that the City knew, or should have known, by July 2003 of both its injury and the cause because of the RWQCB correspondence it received by that date.  The City contends that it could not have discovered its claims against Martin before August 22, 2007, when the plaintiffs filed their SAC, naming Martin as a defendant.

The court finds that the City was on inquiry notice no later than the date the Lewises filed their initial Complaint. By then, the City had been copied on correspondence reporting that PCE had been found below a bend in its sewer line.  (Martin Ex. 7; Resp. to Martin's Statement of Undisputed Facts ¶ 18.) More importantly, the Complaint itself alleged that PCE had been found on the Property and adjacent property and that the City's sewer system contributed to the PCE leakage.  (Compl. ¶¶ 19, 21, 23, 26.)  These allegations would have again alerted the City of a potential injury to its property.  A reasonable person with knowledge of contamination on his property would be expected to make a further investigation about the source.  See SPPI-Somersville, Inc., 2009 WL 2390347, at *4 (discovery of contamination on property would induce a reasonable person to make further investigation as to whether one of the two adjacent

13

1  landfills was the cause).  This is because this kind of

2  contamination is the kind of injury likely to stem from

3  wrongdoing, unlike cancer, for example, which has a multitude of

4  possible origins, many of which are not tortious.

5       The next step in the O'Connor analysis is to determine

6  whether a reasonable inquiry would have put the City on notice of

7  its claims more than three years before it filed them.  See

8  O'Connor, 311 F.3d at 1155.  The January 15, 2003, RWQCB letter

9  explained that the dry cleaning machines Russell used may "have

10 significantly contributed to PCE releases from the facility."

11 (Martin Ex. 5.)  Such older machines "used substantially more

12 PCE" than the latest machines do, and the "[i]ncreased PCE usage

13 require[d] more frequent solvent deliveries and increase[d]

14 chances for discharges associated with spills and leaks."  (Id.)

15 The letter also noted that Russell admitted that "he discharged

16 PCE-laden wastewater to the sewers" and that "pipes shift after

17 installation and can separate at joints releasing PCE."  (Id.)

18 The cumulative effect of these statements is to establish a

19 significant connection between the PCE contamination on the

20 Property, the manufacturer of the dry cleaning equipment used at

21 the Property, and PCE contamination on the City's property.  See

22 Freier v. Westinghouse Elec. Corp., 303 F.3d 176, 208 (2d Cir.

23 2002) (analyzing letter sent generally to "concerned citizens,"

24 as well as news articles, in determining if § 9685's "reasonably

25 should have known standard" is met).  Thus, a basic review by the

26 City of the RWQCB documents would have given it knowledge of its

27 claims.  See Bibeau v. Pac. Nw. Research Found. Inc., 188 F.3d

28 1105, 1108 (9th Cir. 1999) ("The plaintiff must be diligent in

                              14

discovering the critical facts . . . [and] will be barred from
bringing his claim after the running of the statute of
limitations, if he should have known in the exercise of due
diligence."); Chrysler Workers Ass'n v. Chrysler Corp., 834 F.2d
573, 579 (6th Cir. 1987) ("[T]he asserted actual knowledge of
plaintiffs is not determinative if they did not act as reasonable
persons and, in effect, closed their eyes to evident and
objective facts concerning accrual of their right to sue.").

The City points to the slow pace of this litigation,
precipitated by extended stays and a focus on settlement, as the
chief obstacle to discovering its claims against Martin.  It also
suggests that a claimant in its position--having never owned the
dry cleaning facility allegedly at the source of the
contamination--would have a difficult time obtaining the
information needed to support it claims.  See Adobe Lumber, Inc.
v. Hellman, No. Civ. 05-1510 WBS PAN, 2008 WL 4615285, at *5
(E.D. Cal. Oct. 17, 2008) (noting that for the owner of a
shopping center, "information concerning the practice of
discharging wastewater into the floor drain and the identities of
the [dry cleaning] equipment manufacturer and PCE delivery
company, concern information that a landlord in the plaintiff's
position would not ordinarily possess absent some disclosure by
another").

As just explained, however, the City already had the
documents containing the facts needed to support its claim before
litigation even commenced.  Cf. Whitlock, 2009 WL 3415783, at *6
(finding it "at least plausible that the plaintiffs remained
unaware of the health risks caused by the contamination for a

long period of time" when the asserted basis of their knowledge
of the contamination underlying their claims was based largely on
widespread media coverage).  As to the exact identity of the
manufacturer involved, a reasonable search might have begun by
looking up the term "Martinizing," used in the name of the
businesses belonging to two of the dry cleaning operator
defendants, given the obvious connection between the dry cleaning
facility and the PCE leakage revealed in the RWQCB letters.  See
Dubose v. Kan. City S. Ry. Co., 729 F.2d 1026, 1031 (5th Cir.
1984) ("When a plaintiff may be charged with awareness that his
injury is connected to some cause should depend on factors
including how many possible causes exist.").  Such a basic step
would not have been verboten even once litigation commenced.

        Crucially, even if the name "Martinizing" was not
investigated, basic discovery was available.  In this case, the
parties engaged in written discovery before the initial
Settlement Stay.  (King Decl. ¶ 5.)  Had the City asked the
various operators of the dry cleaning facility the name of the
manufacturer of the equipment each used, it would have been able
to amend its cross-complaint to include the identified company or
companies more than three years before it actually did so.  Cf.
Fox v. Ethicon Endo-Surgery, Inc., 35 Cal. 4th 797, 807 (2005)
(noting that there is a distinct difference between "between
ignorance of the identity of the defendant and ignorance of the
cause of action" because of "the commonsense assumption that once
the plaintiff is aware of the latter, he normally has sufficient
opportunity, within the applicable limitations period, to
discover the identity of the former" (quoting Norgart v. Upjohn

Co., 21 Cal. 4th 383, 399 (1999)) (internal quotation marks omitted)); Simmons v. S. Cent. Skyworker's, Inc., 936 F.2d 268, 270 (6th Cir. 1991) (adopting the reasoning behind the principle that a statute of limitations commences when a plaintiff can identify contraceptives as the cause of the illness, rather than is tolled until a plaintiff can identify as defendants the manufacturers of specific ingredients or substances contained in the contraceptives).  The fact that the parties were focused on settlement does not excuse a party on inquiry notice from "knowledge of facts that he would have discovered through inquiry."  O'Connor, 311 F.3d at 1150.  To hold otherwise would encourage injured parties to forswear basic investigation that would reveal the identity of defendants in order to delay the commencement of the statute of limitations period indefinitely.

The City admits that it received the correspondence from the RWQCB. (See Response to Martin's Stmt of Undisputed Facts ¶¶ 15, 17, 19.)  It presents no conflicting evidence to show that a reasonable inquiry based on that correspondence and basic discovery would not have revealed that Martin caused its injuries.  The only reasonable inference to be drawn from the submitted evidence is that the City should have known of its claims against Martin at or soon after the time the original complaint was filed in December 2003.  Accordingly, because no genuine issue of material fact remains with respect to the timeliness of the City's negligence claims against Martin, the Court will grant Martin's motion for summary judgment on those claims.

2.   Strict Products Liability Claim

17

1     Martin again alleges that the City's strict products

2   liability claim is time-barred.  The City concedes that its claim

3   is untimely under California's three-year statute of limitations

4   and thus relies on the discovery rule to toll the limitations

5   period.  For the same reasons discussed above, there remain no

6   genuine issues of material fact as to whether the City should

7   have known of its claims against Martin more than three years

8   before filing its FACC.  Accordingly, the court will grant

9   Martin's motion for summary judgment on the City's strict

10  products liability claim.

11            3.   Davis Municipal Code Section 33.00 Claim

12            Chapter 33.03 of the Davis Municipal Code ("Code"),

13  entitled "Discharge Requirements," regulates the release of

14  contributions into the City's sewer system.  The City alleges

15  that Martin violated two of the Code's discharge provisions.  The

16  first provision prohibits "any user to contribute or cause to be

17  contributed, directly or indirectly, any pollutant or wastewater

18  which will interfere with the operation or performance of the"

19  treatment works.  Davis, Cal., Municipal Code §

20  33.03.050(a)(2012).  The second provision forbids any "user" to

21  contribute "[a]ny wastewater, which causes a hazard to human life

22  or creates a public nuisance."  Id. § 33.03.050(b)(12).

23            First, the City concedes that its Code claim is

24  untimely under California's three-year statute of limitations and

25  thus relies on the discovery rule to toll the limitations period.

26  For the same reasons discussed above, there remain no genuine

27  issues of material fact as to whether the City should have known

28  of its claims against Martin more than three years before filing

                                  18

1   its FACC.  Accordingly, the City's Code claim is time-barred.

2         Second, even if the City's claim were timely, the court

3   finds that the Code does not apply to Martin because it is not a

4   "user."  For the ordinance's discharge provisions to govern any

5   actor, it must initially qualify as a "user."  The Code defines

6   "user" as "any person who contributes, causes or permits the

7   contribution of wastewater into the city's" treatment works.  Id.

8   § 33.03.030.

9         In California, "[t]he construction of an ordinance is a

10  pure question of law for the court, and the rules applying to

11  construction of statutes apply equally to ordinances."  H.N. &

12  Frances C. Berger Found. v. City of Escondido, 127 Cal. App. 4th

13  1, 12 (2005)(4th Dist. 2005).  "'Where terms are not defined

14  within a statute, they are accorded their plain and ordinary

15  meaning . . . .'"  Hinds Investments, L.P. v. Angioli, 654 F.3d

16  846, 850 (9th Cir. 2011) (quoting Greewood v. CompuCredit Corp.,

17  615 F.3d 1204, 1208 (9th Cir. 2010)).  "Where the words of a

18  statute do not have a 'plain meaning,' statutory construction is

19  necessary."  City of Modesto Redev. Agency v. Superior Court, 119

20  Cal. App. 4th 28, 36 (1st Dist. 2004) ("City of Modesto").

21        The Code does not define the words "contributes,"

22  "causes," or "permits" in its definition of "user."  Nor does the

23  plain meaning of those terms indicate who qualifies as a "user."

24  In City of Modesto, a California court of appeal considered the

25  scope of the California Polanco Redevelopment Act ("Polcano

26  Act"), which imposes the costs of environmental remediation on

27  any "[r]esponsible party."  119 Cal. App. 4th at 34-35.  The

28  Polcano Act defines a "responsible party" as one "who has caused

or permitted, causes or permits, or threatens to cause or permit any waste to be discharged or deposited . . . ."  Id. at 35 (quoting Porter-Cologne Water Quality Control Act ("Porter-Cologne Act"), Cal. Water Code § 13304(a)) (Porter-Cologne Act supplies the definition of "responsible party" for Polcano Act). The court explained that this statutory language "does not indicate whether 'cause' refers to a party who was directly involved with a discharge, to anyone whose actions were a substantial factor in causing the discharge, or even, as the city argued below, to anyone who places a hazardous substance into the chain of commerce."  Id. at 37.  In its use of the same words "causes" and "permits," the Code likewise does not plainly dictate what extent of involvement with wastewater disposal a party must show to have "contribut[ed], cause[ed] or permit[ted]."  Therefore, construction of these terms is required.

The City argues that Martin qualifies as a "user" because it "contribute[d], cause[d] or permit[ted]" wastewater simply by enabling the creation of waste by manufacturing and selling its equipment and including instructions indicating that wastewater could be discharged into a sewer.[8]  This conclusion would require the court to give the terms of the ordinance a broad construction, such that a party could be liable under the discharge provisions even if it did not actively participate in the production or discharge of waste.

---

[8]    The City states that Martin "contributed to or caused contaminated discharges into the sewer system by making and selling the equipment used on the Property, and by instructing operators that PCE-laden wastewater could be discharged into the sewer system."  (Opp'n to Mot. Summ. J. 16:6-9.)

1    The structure of the ordinance does not permit such a
2  broad reading.  The objective of the Discharge Requirements
3  chapter is to prevent the release of pollutants into the city
4  wastewater system that will jeopardize the functioning of the
5  system or intermingle without adequate treatment with the
6  environment.  Municipal Code § 33.03.010.  It imposes a variety
7  of discharge prohibitions and provides for the development of
8  effluent limitations for "users" who contribute any of the
9  prohibited substances.  Id. § 33.03.050 (a)–(c).  It requires
10  all "users" to pay fees to use the wastewater disposal system,
11  id. § 33.03.130, and provides for enforcement measures against
12  violators.  Id. §§ 33.03.350, 33.03.370.

13    Rather, the scheme that emerges from the Discharge
14  Requirements is one concerned with the person or entity actively
15  discharging waste.  The provisions, concerned with the effects of
16  inappropriate discharges, are structured to control the actor who
17  directly causes the pollutants to enter into the system; that is,
18  the actor who pays the fees to use the system and has it within
19  his control to allow for the physical release of pollutants.  A
20  manufacturer like Martin, who provides only the equipment that
21  produces a waste product or proposes different manners of
22  disposing of wastewater, has no control over whether pollutants
23  are actually released into the sewer system.[9]

24
25    [9]    The Ninth Circuit held last year that dry cleaning
equipment manufacturers do not make the required "affirmative
26  acts or instructions" that support a nuisance finding when "their
instruction manuals state[] that waste water from their machines
27  'must flow into an open drain,' 'may be drained into a container
or piped directly to a floor drain,' or 'should be piped into an
28  open sewer.'"  Hinds Invs., L.P. v. Angioli, 445 F. App'x 917,
919–20.

21

1    To determine the scope of the similar language in the
2  Polcano Act, the City of Modesto court turned to the common law
3  of nuisance, with which it found the underlying Porter-Cologne
4  Act to be "harmonious."  119 Cal. App. 4th at 37.  Considering
5  the principles of nuisance law, the court found that only "those
6  who took affirmative steps directed toward the improper discharge
7  of solvent wastes" would be liable under the statute's "causes or
8  permits" language.  Id. at 43.

9    Along with certain other specifically enumerated
10  prohibited substances, the Code makes unlawful the release of
11  "[a]ny wastewater which causes a hazard to human life or creates
12  a public nuisance."  Municipal Code § 33.03.050(b)(12).  Given
13  this indication that the Discharge Provisions are meant to
14  prevent discharges rising to the level of nuisance, it is
15  reasonable to construe the "contributes, causes or permits"
16  language in the Code along general nuisance principles to require
17  a more definite causal role for a "user," as the City of Modesto
18  court did and as the structure of the discharge requirements
19  dictates.  See City of Modesto, 119 Cal. App. 4th at 39 (noting
20  that the "law of nuisance is not intended to serve as a surrogate
21  for ordinary products liability").

22    Additionally, the Ninth Circuit has interpreted the
23  phrase "has contributed or is contributing" in the Resource
24  Conservation and Recovery Act of 1976 ("RCRA"), a statute
25  allowing for suit against dischargers of hazardous waste.  See
26  Hinds Investments, L.P., 654 F.3d at 869-76.  The RCRA defined
27  the scope of its prohibition on "contributing" to waste disposal
28  by listing such actions as "handling, storage, treatment,

22

1   transportation, or disposal" as ones that count as contributions.

2   Id. at 851 (quoting RCRA, 42 U.S.C. § 6972(a)(1)(B)).  Although

3   the Code does not include the same detailed description of what

4   counts as a contribution, the common meanings of the words

5   "contributes," "causes," and "permits" also plainly "require[] a

6   more active role with a more direct connection to the waste,"

7   such as handling or actually disposing of the waste.  Id. at 851;

8   see Sycamore Indus. Park Assocs. v. Ericsson, Inc., 546 F.3d 847,

9   854 (7th Cir. 2008) ("By definition, the phrase 'has contributed

10  or is contributing' requires affirmative action.").  The

11  requirement that a "user" "contributes, causes or permits" is one

12  of agency and of control.  It cannot be stretched so thin as to

13  implicate those with only the most attenuated connection to the

14  act of waste contribution.

15          The court thus finds that to qualify as a "user" under

16  the Code requires an affirmative action or some degree of

17  control.  There is no evidence that Martin had control over waste

18  disposal at the Property at any time and the City does not allege

19  any more active participation than that Martin made and sold the

20  equipment used at the Property and provided instructions that

21  wastewater could be discharged to the sewer system.  Cf. Hinds

22  Invs., L.P., 445 F. App'x at 919-20 (holding that waste disposal

23  recommendations accompanying dry cleaning equipment do not rise

24  to affirmative acts or instructions that could supporting a

25  finding of nuisance).  As a matter of law, the Discharge

26  Provisions do not apply to Martin and thus the court will grant

27  Martin's motion for summary judgment on the City's Code claim for

28

1 this reason as well.[10]

2     4.  <u>Negligence Per Se Claim</u>

3       To prevail on a negligence <u>per se</u> claim, a plaintiff

4 must prove "that (1) the defendant violated a statute or

5 regulation, (2) the violation caused the plaintiff's injury, (3)

6 the injury resulted from the kind of injury the statute or

7 regulation was designed to prevent, and (4) the plaintiff was a

8 member of the class of persons it was intended to protect." <u>Cal.</u>

9 <u>Dep't. of Toxic Substances Control</u>, 368 F. Supp. 2d at 1084

10 (citing <u>Alejo v. City of Alhambra</u>, 75 Cal. App. 4th 1180, 1184-85

11 (2d Dist. 1999)).

12       As explained in section III.A.1, the City's negligence

13 <u>per se</u> claim is time-barred.  Even if it were not, Martin would

14 be entitled to summary judgment on the City's negligence <u>per se</u>

15 claim predicated on the Davis Municipal Code because the court

16 has granted Martin summary judgment on the Code claim.[11]

17       IT IS THEREFORE ORDERED that Martin's motion for

18 summary judgment on the City's claims against it for negligence,

19 negligence <u>per se</u>, strict products liability, and violation of

20 Davis Municipal Code Chapter 33.00 be GRANTED.

21 DATED:  October 2, 2012

22 WILLIAM B. SHUBB
   UNITED STATES DISTRICT JUDGE

23

---

24    [10]   The parties present conflicting evidence as to whether
a precursor ordinance to Chapter 33 existed at the time Martin's

25 equipment was in use at the Property.  Because the City's Code
claim is time-barred and Martin does not qualify as a user under

26 the statute, the court need not decide this issue.
   [11]   Because the City's negligence <u>per se</u> claim is time-

27 barred, later determination of the City's CERCLA claims will not
affect the court's grant of summary judgment on the negligence

28 <u>per se</u> claim.