UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHARLES H. LEWIS and JANE W. LEWIS,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROBERT D. RUSSELL; IRENE RUSSELL; BEN J. NEWITT; the Estate of PHILLIP NEWITT, Deceased; JUNG HANG SUH; SOO JUNG SUH; JUNG K. SEO; THE DAVIS CENTER, LLC; MELVIN R. STOVER, individually and as trustee of the Stover Family Trust; EMILY A. STOVER, individually and as trustee of the Stover Family Trust; STOVER FAMILY TRUST; RICHARD ALBERT STINCHFIELD, individually and as successor trustee of the Robert S. Stinchfield Separate Property Revocable Trust, and as trustee of the Barbara Ellen Stinchfield Testamentary Trust; ROBERT S. STINCHFIELD SEPARATE PROPERTY REVOCABLE TRUST; THE BARBARA ELLEN STINCHFIELD TESTAMENTARY TRUST; WORKROOM SUPPLY, INC., a California corporation; SAFETY-KLEEN CORPORATION, a California corporation; the CITY OF DAVIS; JENSEN MANUFACTURING COMPANY; | NO. CIV. 2:03-2646 WBS CKD<br><br>MEMORANDUM AND ORDER RE: MOTION FOR LEAVE TO AMEND |

1

1  VIC MANUFACTURING COMPANY;
   MARTIN FRANCHISES INC., aka/dba
2  MARTINIZING DRY CLEANING,

3              Defendants.
   _____
4
   AND RELATED COUNTER, CROSS,
5  AND THIRD PARTY CLAIMS.
                                  /
6
7                        ----ooOoo----

8              Charles H. Lewis and Jane W. Lewis (the "Lewises")
9  brought this action pursuant to the Comprehensive Environmental
10 Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.
11 §§ 9601-9675, for recovery of costs incurred to remove hazardous
12 substances from a piece of real property located in Davis,
13 California ("Property").  Presently before the court is the
14 cross-claimant City of Davis's ("City") motion for leave to file
15 a second amended cross-complaint ("SACC") pursuant to Rule
16 15(a)(2).

17 I.   Factual and Procedural Background

18             This multi-party litigation concerns the contamination
19 of the Property with tetrachloroethene ("PCE"), a chemical
20 allegedly released through the operation of a dry cleaning
21 facility on the Property.  (Second Am. Compl. ("SAC") ¶ 40
22 (Docket No. 197).)  The parties include the alleged owners and
23 managers of the Property during the relevant time period; the
24 City, which allegedly contributed to the PCE contamination; the
25 operators of the dry cleaning facility; the entities that
26 supplied and removed the PCE; and the manufacturers of the
27 equipment used in dry cleaning operations at the Property.  (Id.
28 ¶¶ 7-25, 44; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2

                                2

(Docket No. 198).)  Since the filing of the original complaint in 2003, the parties have filed numerous counterclaims, cross-claims, and third-party claims for contribution pursuant to 42 U.S.C. § 9613(f).

### A. Contamination History

In 2001, the City provided the California Regional Water Quality Control Board, Central Valley Region ("RWQCB") with information that a pipe emerging from Lewis Cleaners was discharging water into a broken pipe on the ground and that water samples revealed elevated levels of PCE. (Martin's Req. for Judicial Notice ("Martin") Ex. 1 (Docket No. 409).)

The RWQCB then issued a Cleanup and Abatement Order ("Abatement Order") on October 2, 2002, instructing the current and past owners and operators of the Property to investigate the extent of the PCE contamination and to prepare work plans to address the contamination. (SAC ¶ 42.)  The Abatement Order stated that "[t]wo municipal wells are located within the vicinity of the site," but also reported that "VOCs [volatile organic compounds] have not been detected in any City municipal wells." (Martin Ex. 2.)  The City received a copy of the Abatement Order. (See Resp. to Martin's Stmt. of Undisputed Facts ¶ 11 (Docket No. 419).)

On November 1, 2002, defendant Robert Russell, who operated a dry cleaning business on the property from 1964 to 1971, petitioned his designation as a discharger in the Abatement Order. (Martin Ex. 4.)  In his petition and accompanying declaration, Russell admitted that he installed the dry cleaning equipment used in his business and that, during his

3

1  "Russell's One Hour Martinizing" operations, he discharged the
2  wastewater that the equipment generated into the City sewer
3  system.  (Id.)
4       The RWQCB dismissed Russell's petition on January 15,
5  2003.  (Id. Ex. 5.)  On January 17, 2003, the RWQCB called for
6  further investigation to determine if several City wells might be
7  contaminated with PCE.  (Id. Ex. 6.)  It reported that PCE had
8  been found below a bend in the City's sewer line on July 2, 2003.
9  (Id. Ex. 7.)  The City received copies of all these documents.
10 (See Resp. to Martin's Statement of Undisputed Facts ¶¶ 15, 17,
11 19.)
12     B.  Procedural History
13      The Lewises filed the Complaint in this action on
14 December 9, 2003, naming the City as a defendant.  (See Compl.
15 (Docket No. 1).)  In their original Complaint, plaintiffs alleged
16 that "gaps and cracks" in the City's sewer system permitted the
17 release of PCE into the Property and adjacent properties.  (Id. ¶
18 26.)  They also alleged that defendant dry cleaner operators
19 Robert Russell and the Newitts were responsible, in part, for the
20 leakage of PCE, identifying their respective businesses as
21 "Russell's One Hour Martinizing" and "Newitt's One Hour
22 Martinizing."  (Id. ¶¶ 7-9, 19-21.)
23      On May 24, 2004, the parties indicated in a Joint
24 Status Report that they were agreeable to participating in a
25 voluntary mediation process.  (See J. Status Report (Docket No.
26 21); King Decl. to Opp'n to Mot. Summ. J. ("King Decl.") ¶ 4
27 (Docket No. 420).)  Until September 2, 2004, no party propounded
28 written discovery.  (King Decl. ¶ 5.)  The court ordered a stay

4

of litigation on April 13, 2005, to facilitate an agreed-upon settlement process. (See Order of Settlement Process 1:23-2:2, 12:6-7 (Docket No. 124).) In November 2005, the City made two payments of $20,000 each toward the parties' joint investigation of the alleged contamination as part of the mediation process. (King Decl. ¶ 10.) After the settlement process failed to resolve the litigation, the court dissolved the stay on September 12, 2008. (See Sept. 12, 2008 Order (Docket No. 253).)

During the settlement stay, the court granted plaintiffs leave to file their SAC. (Aug. 8, 2007 Order (Docket No. 195).) On August 22, 2007, plaintiffs filed their SAC and brought Martin Franchises, Inc. ("Martin") into the litigation for the first time as a defendant. (See SAC ¶ 25.) The City named Martin as a cross-defendant when it filed its First Amended Cross-Complaint ("FACC") on February 29, 2008. (See FACC ¶ 21 (Docket No. 229).) The FACC asserted claims against Martin for recovery under CERCLA § 107(a), contribution under CERCLA § 113(f), strict products liability, negligence, negligence per se, public nuisance under California Civil Code Section 713, public nuisance under Davis Municipal Code Chapter 23.0.0, violation of Davis Municipal Code Chapter 33.0.0, contribution, equitable indemnity, declaratory relief under CERCLA § 113(g), and declaratory relief under 28 U.S.C. § 2201.

On May 7, 2009, the court stayed the entire action for a second time because defendants Jung Hang Suh and Soo Jung Suh filed bankruptcy. Lewis v. Russell, No. Civ. 2:03-2646 WBS KJM, 2009 WL 1260290, at *3 (E.D. Cal. May 7, 2009). Following the

5

1 resolution of the Suh's bankruptcy proceedings, the automatic
2 stay was lifted on January 29, 2011.  (Docket No. 333.)
3         Once the bankruptcy stay was lifted, the parties filed
4 an Amended Joint Status Report on April 4, 2011.  (Docket No.
5 341.)  In that report, completed before the court issued a Status
6 (Pretrial Scheduling) Order, the City stated that "it may seek
7 leave of the Court to amend its pleadings . . . to assert federal
8 and state law claims against . . . Martin Franchises[,] Inc."
9 (Am. Joint Status Report at 18:1-4.)  On April 29, 2011, the City
10 then served written discovery requests on Martin.  (See King
11 Decl. to Reply to Mot. Summ. J. (Docket No. 426) ¶ 14.)  The City
12 and Martin engaged in settlement negotiations until August 17,
13 2012, when Martin filed a motion for summary judgment on the
14 City's cross-claims.  (See King Decl. ¶¶ 15-16.)  The City filed
15 its motion for leave to amend later the same day.  (Docket No.
16 410.)

II. <u>Legal Standard</u>

        Generally, a motion to amend is subject to Rule 15(a)
of the Federal Rules of Civil Procedure, which provides that
"[t]he court should freely give leave [to amend] when justice so
requires."  Fed. R. Civ. P. 15(a)(2).  However, "[o]nce the
district court ha[s] filed a pretrial scheduling order pursuant
to Federal Rule of Civil Procedure 16[,] which establishe[s] a
timetable for amending pleadings[,] that rule's standards
control[]."  <u>Johnson v. Mammoth Recreations, Inc.</u>, 975 F.2d 604,
607-08 (9th Cir. 1992).  Here, the court issued a Status
(Pretrial Scheduling) Order on April 14, 2011, which states that
further amendments to the pleadings are prohibited "except with

6

1  leave of court, good cause having been shown under Federal Rule
2  of Civil Procedure 16(b)."  (Docket No. 20.)
3          Under Rule 16(b), a party seeking leave to amend must
4  demonstrate "good cause."  Fed. R. Civ. P. 16(b).  "Rule 16(b)'s
5  'good cause' standard primarily considers the diligence of the
6  party seeking amendment."  Johnson, 975 F.2d at 609.  "If that
7  party was not diligent, the inquiry should end."  Id.  Although
8  "the focus of the inquiry is upon the moving party's reasons for
9  seeking modification[,]" a court may make its determination by
10 noting the prejudice to other parties.  Id.
11         If good cause is found, the court must then evaluate
12 the request to amend the complaint in light of Rule 15(a)'s
13 liberal standard.  Id. at 608.  Courts commonly consider four
14 factors when deciding whether to grant a motion for leave to
15 amend a complaint under Rule 15(a): bad faith, undue delay,
16 prejudice, and futility of amendment.  Roth v. Marquez, 942 F.2d
17 617, 628 (9th Cir. 1991).  "Because Rule 16(b)'s 'good cause'
18 inquiry essentially incorporates the first three factors, if a
19 court finds that good cause exists, it should then deny a motion
20 for leave to amend only if such amendment would be futile."
21 Baisa v. Indymac Fed. Reserve, No. Civ. 2:09-1464 WBS JFM, 2010
22 WL 2348736, at *1 (E.D. Cal. June 7, 2010).
23 III. Legal Analysis
24         The City's proposed SACC eliminates its previous causes
25 of action against Martin based on CERCLA, as well as its various

7

nuisance claims.[1]  It also adds a cause of action for continuing trespass and factual allegations relating to the delayed discovery rule.  (King Decl. to Mot. for Leave to File SACC Ex. A (Docket No. 412).)  The court here limits its discussion to the City's request to add a new claim.[2]

To show good cause under Rule 16(b), the party seeking amendment must show that it helped the court to create a workable scheduling order, that it cannot comply with the scheduling order's deadlines due to matters that were reasonably unforeseeable at the time the scheduling order issued, and that it was diligent in seeking amendment of the order once it became clear that it could not comply.  Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E.D. Cal. 1999).

The most significant factor cutting in favor of the City's request to amend is its demonstrated good faith in assisting the court in creating a scheduling order.[3]  The remaining factors militate against granting the City's request.  In the status report completed before the Court's Status

---

[1] This includes the City's claim under Davis Municipal Code Chapter 23.0.0.

[2] In a separate Order, the court provided the City with an opportunity to request more time pursuant to Rule 56(d) to oppose Martin's motion for summary judgment on its CERCLA and nuisance claims.  (See Oct. 2, 2012 Order.)  At the hearing on the summary judgment motion and the instant motion, the City stated that it no longer seeks to drop those claims.  It also agreed that the allegations it seeks to add via amendment were advanced in opposition to Martin's motion for summary judgment.

[3] The City objects to Martin's statements regarding the content of the parties' confidential settlement negotiations.  The objection is duly noted and the court does not consider the statements in deciding the instant motion.

1  (Pretrial Scheduling) Order, the City stated that "it may seek
2  leave of the Court to amend its pleadings . . . to assert federal
3  and state law claims against . . . Martin Franchises[,] Inc."
4  (Am. Joint Status Report at 18:1-4.)  Despite this forewarning,
5  the City is unable to explain why it waited over three years to
6  seek amendment.
7            Under Rule 16(b), the failure to point to the discovery
8  of any new facts to support the proposed claim is often fatal.
9  See Acri v. Int'l Ass'n of Machinists & Aerospace Workers, 781
10 F.2d 1393, 1398 (9th Cir. 1986) ("[L]ate amendments to assert new
11 theories are not reviewed favorably when the facts and the theory
12 have been known to the party seeking amendment since the
13 inception of the cause of action.").  The City states that it did
14 not have the facts needed to prove its continuing trespass claim
15 until Martin disclosed a copy of the manuals for the Martin dry
16 cleaning equipment operated on the Property for the first time on
17 or about March 2, 2009.  (Reply to Mot. for Leave to Amend 6:22-
18 7:5.)  However, despite having the factual basis for its
19 continuing trespass claim since March 2, 2009, the City has
20 waited more than three years to bring this claim.
21           The City attempts to explain this delay, and show its
22 diligence, by recounting that only two months after it learned of
23 the factual basis for its claim, the court imposed a stay on the
24 litigation that lasted until January 19, 2011, and then issued
25 the Scheduling Order on April 14, 2011.  After the Scheduling
26 Order was issued, the City states that it diligently served
27 discovery requests on Martin and has been engaged in settlement
28 negotiations with Martin since that time, which dissuaded it from

amending its cross-complaint sooner. (King Decl. to Reply to Mot. for Leave to Amend ¶¶ 8, 12.) The court does not see how any of these circumstances precluded the City from, in diligence, meeting the scheduling order or bringing its continuing trespass claim any sooner.

Over a year-and-a-half of active litigation has passed since the City first learned of the facts needed to bring the claim. Courts have found even substantially shorter delays to be a basis to deny leave to amend. See AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 953 (9th Cir. 2006) (upholding district court's denial of leave to amend under more liberal Rule 15(a) standard when fifteen-month delay between discovery of requisite facts and seeking leave); Texaco, Inc. v. Ponsoldt, 939 F.2d 794, 799 (9th Cir. 1991) (finding eight-month delay to be "unreasonable"); Jackson v. Bank of Haw., 902 F.2d 1385, 1388 (9th Cir. 1990) (upholding district court's denial of leave to amend under more liberal Rule 15(a) standard when eight-month delay between discovery of requisite facts and seeking leave). And undue delay alone is "'a valid reason for denying leave to amend.'" Texaco, Inc., 939 F.2d at 798 (quoting Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1454 (9th Cir. 1990)).[4]

Given the length of time the City knew of the facts to support its continuing trespass claim, the reason behind its delay in bringing the claim appears to be tactical. However,

---

[4] Only under the more liberal Rule 15(a) standard is undue delay an insufficient ground to deny leave to amend. See United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981).

10

"[a] tactical decision to delay does not merit good cause." Long v. Ford Motor Co., No. Civ. 07-2206, 2009 WL 903404, at *3 (D. Ariz. Apr. 1, 2009) (citing Acri, 781 F.2d at 1398). The City had five months of active litigation and a two-year stay to consider its continuing trespass claim before the scheduling order issued. Its decision to wait until after it served written discovery requests on Martin, even though it already had the facts needed to allege its claim, and until after the Ninth Circuit decided cases it has deemed "inapposite" to its continuing trespass claim, (Reply to Mot. for Leave to Amend 15:26), does not demonstrate diligence.

Moreover, "where there is a summary judgment motion pending, leave to amend may be denied when the plaintiff has not made a 'substantial showing' to support the amendment." Oncology Therapeutics Network Connection v. Va. Hematology Oncology PLLC, No. Civ. 05-3033 WDB, 2006 WL 334532, at *13 (N.D. Cal. Feb. 10, 2006); see Maldonado v. City of Oakland, No. Civ. 01-1970 MEJ, 2002 WL 826801, at *4 (N.D. Cal. Apr. 29, 2002) (denying motion for leave to amend made two days before noticed hearing date for defendant's summary judgment motion and over one year past the filing of the initial complaint). The City filed its motion for leave to amend hours after Martin's motion for summary judgment. It appears that the motivation behind the City choosing this late date to amend its cross-complaint is to survive summary judgment.[5] When the moving party has such a motivation, "its

---

[5] Each party offers its own version of the history leading up to Martin's filing the motion for summary judgment. It is difficult to glean the truth from the two accounts. The

11

motive weighs against granting leave to amend." Forty-Niner Sierra Res., Inc. v. Subaru of Am., Inc., 416 F. Supp. 2d 861, 871 (E.D. Cal. 2004) (denying motion for leave to amend when plaintiff made motion twenty-five days after defendant filed motion for summary judgment); see Schlacter-Jones v. Gen. Tel. of Cal., 936 F.2d 435, 443 (9th Cir. 1991), abrogated by Cramer v. Consol. Freightways, Inc., 255 F.3d 683 (9th Cir. 2001) ("A motion for leave to amend is not a vehicle to circumvent summary judgment."); M/V Am. Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1492 (9th Cir. 1983) (noting that a motion for leave to amend is not a tool to avoid summary judgment).  As discussed above, the City's failure to explain why its claim could not have been brought earlier--except to assert that it acted diligently--fails to make the required showing of good cause, much less a "substantial showing."

   The court need not address any potential prejudice, or the lack thereof, the request for leave to amend might pose to Martin.  A court will only assess prejudice where the moving party was diligent in seeking amendment; "[i]f the party seeking the modification 'was not diligent, the inquiry should end.'" Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609).  The court finds that the City was not diligent in seeking leave to amend and therefore

---

dispute is ultimately of limited significance because the court only considers the fact that City waited until after the filing of the summary judgment motion as one factor in its analysis.

12

its inquiry ends.[6]  See also Kuschner v. Nationwide Credit, Inc., 256 F.R.D. 684, 687 (E.D. Cal. 2009) ("If good cause is found, *then* the court turns to Rule 15 to determine whether the amendment sought should be granted.") (emphasis added); Johnson, 975 F.2d at 608.

IT IS THEREFORE ORDERED that the City's motion for leave to amend be, and the same hereby is, DENIED.

DATED:  October 2, 2012

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[6] Because the court need not consider whether the City's proposed amendment would meet Rule 15 requirements, it does not address the party's arguments regarding the futility of the continuing trespass claim.

13