1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

                            ----oo0oo----

11

12   CHARLES H. LEWIS and JANE W.      NO. CIV. 2:03-2646 WBS CKD
     LEWIS,

13
             Plaintiffs,              MEMORANDUM AND ORDER RE: MOTION
14                                    FOR ORDER APPROVING SETTLEMENT
         v.                           AND BARRING CONTRIBUTION CLAIMS

15
     ROBERT D. RUSSELL; IRENE
16   RUSSELL; BEN J. NEWITT; the
     Estate of PHILLIP NEWITT,
17   Deceased; JUNG HANG SUH; SOO
     JUNG SUH; JUNG K. SEO; THE DAVIS
18   CENTER, LLC; MELVIN R. STOVER,
     individually and as trustee of
19   the Stover Family Trust; EMILY
     A. STOVER, individually and as
20   trustee of the Stover Family
     Trust; STOVER FAMILY TRUST;
21   RICHARD ALBERT STINCHFIELD,
     individually and as successor
22   trustee of the Robert S.
     Stinchfield Separate Property
23   Revocable Trust, and as trustee
     of the Barbara Ellen Stinchfield
24   Testamentary Trust; ROBERT S.
     STINCHFIELD SEPARATE PROPERTY
25   REVOCABLE TRUST; THE BARBARA
     ELLEN STINCHFIELD TESTAMENTARY
26   TRUST; WORKROOM SUPPLY, INC., a
     California corporation; SAFETY-
27   KLEEN CORPORATION, a California
     corporation; the CITY OF DAVIS;
28   JENSEN MANUFACTURING COMPANY;

                              1

1 VIC MANUFACTURING COMPANY;
  MARTIN FRANCHISES INC., aka/dba
2 MARTINIZING DRY CLEANING,

3          Defendants.

4 ────────────────────────────

  AND RELATED COUNTER, CROSS,
5 AND THIRD PARTY CLAIMS.
                                    /
6 ────────────────────────────

7                    ----oo0oo----

8          Charles H. Lewis and Jane W. Lewis (the "Lewises")

9 brought this action pursuant to the Comprehensive Environmental

10 Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C.

11 §§ 9601-9675, for recovery of costs incurred removing hazardous

12 substances from a piece of real property located in Davis,

13 California ("Property").  Charles Lewis, the surviving plaintiff,

14 and defendant Workroom Supply, Inc. ("Workroom") now request that

15 the court approve the settlement they have reached.

16 I.   Factual and Procedural Background

17          This multi-party litigation concerns the contamination

18 of the Property with tetrachloroethene ("PCE"), a chemical

19 allegedly released through the operation of a dry cleaning

20 facility on the Property.  (See Second Am. Compl. ("SAC") ¶ 40

21 (Docket No. 197).)  The parties include the alleged owners and

22 managers of the Property during the relevant time period, the

23 operators of the dry cleaning facility, the entities that

24 supplied and removed the PCE, and the manufacturers of the

25 equipment used in dry cleaning operations at the Property.  (See

26 id. ¶¶ 7-25; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2

27 (Docket No. 198).)  The City of Davis is also a party to the

28 litigation because of its alleged role in maintaining the

                              2

underground sewer system that services the Property.  (SAC ¶ 22.)
Since the filing of the original complaint in 2003, the parties
have filed numerous counterclaims, crossclaims, and third-party
claims for contribution pursuant to 42 U.S.C. § 9613(f).

In February 1999, the California Regional Water
Quality Control Board, Central Valley Region ("RWQCB"), informed
the owners and operators of the Property that it had discovered
PCE in the soil and groundwater at the Property.  (SAC ¶ 40.)
The RWQCB then issued a Cleanup and Abatement Order on October 2,
2002, instructing the current and past owners and operators of
the Property to investigate the extent of the PCE contamination
and to prepare work plans to address the contamination.  (Id. ¶
42.)  Thereafter, some of the parties, including the Lewises,
incurred costs in carrying out the activities ordered by the
RWQCB.  (Id. ¶¶ 42, 46.)

The Lewises filed the Complaint in this action on
December 9, 2003, seeking various forms of declaratory relief and
asserting claims for cost recovery and contribution, 42 U.S.C. §§
9607, 9613; contribution and/or indemnity, Cal. Health & Safety
Code § 25363(e); equitable indemnity and contribution;
negligence; and breach of contract.  (See Compl. (Docket No. 1).)
Workroom was named as one of several defendants in the original
Complaint, (id.), and in the Second Amended Complaint ("SAC") on
the ground that it supplied PCE to the owners and/or operators of
the dry cleaning business located on the Property, (SAC ¶ 20),
and therefore is considered an "operator" under CERCLA, (Pls.'
Opp'n to Mot. for Summ. J. at 3-7 (Docket No. 390)).  Several
defendants filed crossclaims naming Workroom as a cross-

1   defendant.  (E,g., Cross-Cl. by Suhs (Docket No. 13); Cross-Cl.
2   by Newitt (Docket No. 27); First Am. Cross-Cl. by City of Davis ¶
3   17 (Docket No. 229).)

4         Workroom delivered PCE to the property from 1992 to
5   2004.  Workroom disputes claims that it is therefore liable as an
6   "operator" of the property under CERCLA based on these
7   deliveries.  (Def.'s Reply to Pls.' Opp'n to Mot. for Summ. J. at
8   3-6.)  Rather, Workroom argues that it lacked sufficient control
9   over the facility to be considered an operator under CERCLA and
10  that there is no evidence that any PCE contamination occurred
11  during the delivery process.  (Id.)

12        Workroom and Lewis have reached a settlement that they
13  now ask the court to approve.  (Docket No. 406.)  Under the terms
14  of the proposed settlement, Workroom would pay Lewis $30,000 to
15  be used pursuant to the direction of the RWQCB to remediate the
16  groundwater contamination at the Property.  (Hunter-Rocha Decl.
17  ¶ 4 (Docket No. 407).)  Lewis, in turn, has agreed to dismiss his
18  SAC as against Workroom with prejudice.  (Id. ¶ 5.)  Both parties
19  have also agreed to give each other a "broad release with regard
20  to the matters asserted in the instant action and with regard to
21  the Site."  (Id. ¶ 6.)  Both parties' attorneys represent that
22  the settlement is within the reasonable range of Workroom's
23  potential liability and ability to pay, noting that Workroom's
24  liability is contested and that there is uncertainty regarding
25  the facts in dispute, the issues in controversy, and the court's
26  potential ruling on Workroom's motion for summary judgment.  (Id.
27  ¶ 9.)

28        Under the terms of the agreement, the settlement is

                                4

contingent upon this court issuing an order that (1) approves the

settlement, (2) dismisses with prejudice all claims asserted

against Workroom in this proceeding, including those by Lewis,

and (3) bars contribution and indemnity claims against Workroom

in this proceeding.  (Appl. for Determination of Good Faith

Settlement at 3:14-19 (Docket No. 406).)

       The City of Davis has filed an opposition to the

settlement agreement requesting that the court apply the

proportionate share approach, embodied in the Uniform Comparative

Fault Act ("UCFA"), to determine the liability of the non-

settling parties on all federal law and state law claims asserted

in this action.  (Davis's Opp'n to Appl. for Determination of

Good Faith Settlement at 8:12-15 (Docket No. 415).)  While all

parties received notice of the proposed settlement, no party has

otherwise filed an opposition.

II.  Discussion

     A.   Federal Law Claims

       "The initial decision to approve or reject a settlement

proposal is committed to the sound discretion of the trial

judge."  S.E.C. v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984)

(quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d

615, 625 (9th Cir. 1982)).  "Unless a consent decree is unfair,

inadequate, or unreasonable, it ought to be approved."  Id.; see

also Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947

F. Supp. 790, 813 (D.N.J. 1996) ("In deciding whether to approve

a proposed settlement in a CERCLA case, a district court must

weigh the 'fairness, adequacy and reasonableness' of the proposed

settlement." (quoting United States v. Rohm & Haas Co., 721 F.

1   Supp. 666, 685 (D.N.J. 1989))).

2         The settlement proposed by Lewis and Workroom comes in
3   a case that has dragged on for over eight years and in which
4   trial is not set to begin for over a year more.  In environmental
5   clean-up cases such as this one, resolution is often achieved
6   through the settlement process.  Indeed, settlement is a favored
7   outcome under CERCLA.  City of Emeryville v. Robinson, 621 F.3d
8   1251, 1264 (9th Cir. 2010) (citing United States v. Atl. Research
9   Corp., 551 U.S. 128, 138-39 (2007); Kotrous v. Goss-Jewett Co. of
10  N. Cal., Inc., 523 F.3d 924, 930-31 (9th Cir. 2007)).  Mindful of
11  this fact, earlier in this proceeding the court approved a stay
12  of litigation pending settlement talks.  (Docket No. 124.)
13  Although the initial settlement process outlined by the court was
14  unsuccessful, settlement between parties remains an appropriate
15  route to resolution in this CERCLA action.

16        Settlement with respect to Workroom is particularly
17  appropriate given the uncertain evidence as to whether PCE
18  contamination occurred during Workroom's deliveries to the
19  property and the control that it exerted over the property's
20  operations, and thus it is uncertain if it would have ultimately
21  been found liable for clean-up costs associated with the
22  Property.  Both parties were represented by counsel in settlement
23  negotiations, and both parties' attorneys represent that the
24  terms of the settlement are the best available to settle Lewis'
25  claims.  (Hunter-Rocha Decl. ¶ 9.)  These facts all suggest that
26  the settlement is a fair and reasonable one.

27        The court must also determine whether the proposed
28  settlement would prejudice the non-settling parties.  The parties

6

to the settlement have not specified what effect the settlement has on the liability of the non-settling parties.[1]  CERCLA itself does not specify how settlements in private party cost recovery actions should be apportioned or evaluated for fairness, merely charging district courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate."  42 U.S.C. § 9613(f)(1).  Nor has the Ninth Circuit issued a decision directly addressing the issue.  <u>Adobe Lumber, Inc. v. Hellman</u>, No. CIV 05-1510, 2009 WL 256553, at *3 (E.D. Cal. 2009) (noting that "[i]n the twenty-eight years that CERCLA has been [sic] existence, the Ninth Circuit has never addressed the question of the proper credit method for settlements between private PRPs under CERCLA.").  In a non-CERCLA case, the Ninth Circuit has, however, stated that "[t]he proportionate share approach is the law in the Ninth Circuit."  <u>In re Exxon Valdez</u>, 229 F.3d 790, 796 (9th Cir. 2000).

Under the proportionate share approach, embodied in the Uniform Comparative Fault Act ("UCFA"), the liability of non-settling parties is reduced by the proportionate share of the

---

[1]  Although the parties are silent on the issue, there is reason to believe that the parties intend for the court to apply the proportionate share approach.  The parties state that the "issues of disputed fact and law and proof of liability in the instant Lewis-Workroom Settlement are similar to those presented by the Lewis-Newitt Settlement and, for the same reasons, the Lewis-Workroom Settlement also should be approved by the court." (Appl. for Determination of Good Faith Settlement at 5:4-7.)  In the Lewis-Newitt Settlement, the parties specifically requested, and the court approved, application of the proportionate share of liability.  (See Mem. of P. & A. in Supp. of Mot. Approving Settlement at 3:22-5:24 (Docket No. 363); Feb. 29, 2012, Order at 7:14-9:16.)  It is thus reasonable that the parties assumed that the court would similarly apply the proportionate share approach to all settlement agreements in this case.

1  settling party or parties' obligations. <u>Adobe Lumber</u>, 2009 WL
2  256553, at *3 (citing <u>Am. Cyanamid Co. v. Capuano</u>, 381 F.3d 6,
3  20 (1st Cir. 2004)).  This is in contrast to the pro tanto
4  approach of the Uniform Contribution Among Tortfeasors Act
5  ("UCATA"), under which the liability of non-settling parties is
6  reduced only by the dollar amount of the settlement.  <u>Id.</u> (citing
7  <u>In re Jiffy Lube Sec. Litig.</u>, 927 F.2d 155, 161 (4th Cir. 1991)).
8  Under the UCFA, if the settling parties' liability is eventually
9  determined to be greater than the settlement amount, the
10 plaintiff's recovery is reduced; under the UCATA, if the settling
11 parties' liability is less than the settlement amount, the
12 remaining defendants must make up the deficit.  <u>Id.</u> at *4.

13          The overwhelming majority of courts in the Ninth
14 Circuit that have addressed the issue have applied the UCFA in
15 CERCLA cases.  <u>Adobe Lumber</u>, 2009 WL 256553, at *3 (citing
16 cases).  These courts have noted that the UCFA furthers the
17 Congressional intent behind CERCLA because it,

18          1) provides for equitable apportionment of
           responsibility; 2) furthers settlement because no precise
19         dollar amount need be determined upon settlement; 3)
           eliminates the need for a good faith hearing; and 4)
20         prevents culpable settlors from escaping liability
           (whereas under a pro tanto rule, a settlor who paid more
21         than his fair share would reduce the liability of
           nonsettlors, a result which discourages settlement).
22

23 <u>Patterson Envtl. Response Trust v. Autocare 2000, Inc.</u>, No. CIV F
24 01-6606, 2002 U.S. Dist. LEXIS 28323, at *14 (E.D. Cal. June 28,
25 2002) (citing <u>Comerica Bank-Detroit v. Allen Indus., Inc.</u>, 769 F.
26 Supp. 1408, 1414 (E.D. Mich. 1991)).  Under the pro tanto
27 approach, in contrast, the parties injured by a low settlement --
28 the nonsettling defendants -- have no ability to prevent or

8

affect the settlement amount.  The proportionate share approach
thus makes it more likely that pre-trial settlements and the
overall litigation will achieve an equitable allocation of
liability among all responsible parties.

In this case, the court will similarly employ the
proportionate share approach to determine the effect of
settlements, as that method better facilitates the equitable
allocation of liability in accordance with the statutory guidance
of CERCLA section 113(f)(1).  See also New York v. Solvent Chem.
Co., Inc., 984 F. Supp. 160, 168 (W.D.N.Y. 1997) (concluding that
the UCFA "is consistent with the purposes behind [CERCLA]
sections 113(f)(1) and 113(f)(2)"); Hillsborough County v. A & E
Road Oiling Serv., Inc., 853 F. Supp. 1402, 1410 (M.D. Fla. 1994)
(explaining that the purposes of CERCLA include prompt clean up
and the fair allocation of costs and declaring that the "UCFA
effectively embraces both"); United States v. SCA Serv. of Ind.,
Inc., 827 F. Supp. 526, 535 (N.D. Ind. 1993) ("The UCFA will
better promote CERCLA's policy of encouraging settlements, while
securing equitable apportionment of liability for
[n]on-settlors.").

The settlement is also contingent upon a contribution
bar that would protect Workroom from contribution and indemnity
claims "with regard to the matters asserted in this action and
with regard to the Site."  (Appl. for Determination of Good Faith
Settlement at 3:17-19.)  In order to facilitate settlement in
multi-party litigation, a court may review settlements and issue
bar orders that discharge all claims of contribution by non-
settling defendants against settling defendants.  See In re

1   Heritage Bond Litig., 546 F.3d 667, 677 (9th Cir. 2008); Franklin

2   v. Kaypro Corp., 884 F.2d 1222, 1225 (9th Cir. 1989).  A number

3   of courts have held that it is permissible to bar contribution

4   claims against settling parties in a CERCLA contribution action,

5   "in accordance with the federal common law as exemplified by § 6

6   of the Uniform Comparative Fault Act or § 4 of the Uniform

7   Contribution Among Tortfeasors Act."  Responsible Envtl.

8   Solutions Alliance v. Waste Mgmt., Inc., No. 3:04cv013, 2011 WL

9   382617, at *4 (S.D. Ohio Feb. 3, 2011) (citing Stearns & Foster

10  Bedding Co., 947 F. Supp. at 813; Foamseal, Inc. v. Dow Chem.,

11  991 F. Supp. 883, 886 (E.D. Mich. 1998); Barton Solvents, Inc. v.

12  Sw. Petro-Chem, Inc., 834 F. Supp. 342, 345-46 (D. Kan. 1993);

13  Am. Cyanamid Co. v. Kino Indus., Inc., 814 F. Supp. 215, 219

14  (D.R.I. 1993); Comerica Bank-Detroit, Inc., 769 F. Supp. at

15  1413).  Indeed, another court in this district has noted that

16  such an order is often particularly appropriate in CERCLA cases.

17  AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc., Nos. CIV.

18  S-00-113, S-04-1494, 2007 WL 1946635, at *2 (E.D. Cal. July 2,

19  2007) (citing Foamseal, Inc., 991 F. Supp. at 886).

20          In considering whether to approve the settlement, the

21  court notes that it is entirely reasonable that Workroom would

22  wish to free itself from the burden of litigation by settling the

23  claims between Lewis and itself.  It is also entirely reasonable

24  that Lewis would wish to accept certain payment from a defendant

25  whose liability is uncertain and who has a limited ability to

26  pay.  Although Lewis and Workroom did not explain how the $30,000

27  settlement payment compares to the total clean-up costs, the fact

28  that Lewis, who would bear the risk that $30,000 ultimately

10

proves inadequate, contends that it is a reasonable settlement

payment suggests that it is an adequate amount.  The City of

Davis stated that it would not object to the proposed settlement

if the court applied the proportionate share approach to

determine the effect of the settlement, which it has done.

(Davis's Opp'n to Appl. for Determination of Good Faith

Settlement at 3 n.1.).  The court can therefore find no reason

not to find the proposed settlement a fair, reasonable, and

adequate one.

B.    <u>State Law Claims</u>

Although some courts asked to approve an agreement such

as this one that would settle both CERCLA and state law claims

have considered exclusively federal law, <u>Acme Fill Corp. v.

Althin DC Med., Inc.</u>, No. C 91-4268, 1995 WL 822664, at *9 (N.D.

Cal. Nov. 2, 1995), others have considered both federal and state

law, <u>AmeriPride Servs. Inc.</u>, 2007 WL 1946635, at *3-4.  Under

California law, parties to a settlement in an action with

multiple tortfeasors may petition the court to make a

determination that the settlement was entered into in good faith.

<u>See</u> Cal. Civ. Proc. Code §877.6(a).  A hearing need not be held

if non-settling parties are afforded an opportunity to respond to

the request for good faith determination.  <u>See</u> Cal. Civ. Proc.

Code § 877.6(a)(2).

In determining whether a settlement agreement has been

made in good faith, California courts consider "(1) a rough

approximation of plaintiffs' total recovery and the settlor's

proportionate liability; (2) the amount paid in settlement; (3)

the allocation of settlement proceeds among plaintiffs; and (4) a

1   recognition that a settlor should pay less in settlement than he

2   would if he were found liable after a trial." Mason & Dixon

3   Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1064 (9th

4   Cir. 2011) (quoting Tech-Bilt, Inc. v. Woodward-Clyce Assocs., 38

5   Cal. 3d 488, 499 (1985)) (internal quotation marks omitted).

6   "Other relevant considerations include the financial conditions

7   and insurance policy limits of settling defendants, as well as

8   the existence of collusion, fraud, or tortious conduct aimed to

9   injure the interests of non-settling defendants." Id.

10          In this case, there is no suggestion of collusion or

11  fraud.  As noted above, although the parties have not shown how

12  the $30,000 settlement payment compares to the total clean-up

13  costs, the fact that Lewis is willing to accept that amount while

14  bearing the risk that it is less than what Workroom might

15  ultimately have been required to pay suggests that it is in the

16  range of appropriate settlement amounts.  Additionally, under

17  section 877, any party challenging a settlement bears the burden

18  of establishing that the proposed settlement amount is "so far

19  'out of the ballpark' that the equitable objectives of § 877 are

20  not satisfied." Tyco Thermal Controls LLC v. Redwood Indus., No.

21  C 06-07164, 2010 WL 3211926, at *13 (N.D. Cal. Aug. 12, 2010)

22  (citing Tech-Bilt, 38 Cal. 3d at 499-500).  No party here has

23  attempted to make such a showing.

24          Furthermore, under California Code of Civil Procedure

25  section 877.6(a)(2), "[i]f none of the nonsettling parties files

26  a motion within 25 days of mailing of the notice, application,

27  and proposed order, or within 20 days of personal service, the

28  court may approve the settlement."  As previously noted, although

12

1  the City of Davis has filed an opposition to the settlement

2  agreement, the purpose of the motion is to address the liability

3  of the non-settling parties and request that the court apply

4  UCFA's proportionate share approach, not to oppose the good faith

5  of the settlement.  As the court will apply the proportionate

6  share approach to determine the legal effect of the settlement

7  agreement on the liability of the non-settling defendants, no

8  opposition to the settlement agreement remains.

9       Accordingly, the court finds that the settlement was

10  entered into in good faith.

11       IT IS THEREFORE ORDERED that:

12       (1) The settlement between Workroom and Lewis is

13  approved;

14       (2) All claims asserted by Lewis against Workroom in

15  the SAC be, and hereby are, DISMISSED with prejudice;

16       (3) All claims for contribution or indemnity against

17  Workroom arising out of the clean-up of the Property be, and

18  hereby are, barred; and

19       (4) Section 6 of the UCFA is adopted as the law in this

20  case for the purpose of determining the legal effect of the

21  settlement agreement on the liability of the non-settling

22  defendants.

23  DATED:  November 8, 2012

24

25  _____
    WILLIAM B. SHUBB
26  UNITED STATES DISTRICT JUDGE

27

28

                            13