UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHARLES H. LEWIS and JANE W. LEWIS, | NO. CIV. 2:03-2646 WBS CKD |
| Plaintiffs, | MEMORANDUM AND ORDER RE: MOTION FOR ORDER APPROVING SETTLEMENT AND BARRING CONTRIBUTION CLAIMS |
| v. | |
| ROBERT D. RUSSELL; IRENE RUSSELL; BEN J. NEWITT; the Estate of PHILLIP NEWITT, Deceased; JUNG HANG SUH; SOO JUNG SUH; JUNG K. SEO; THE DAVIS CENTER, LLC; MELVIN R. STOVER, individually and as trustee of the Stover Family Trust; EMILY A. STOVER, individually and as trustee of the Stover Family Trust; STOVER FAMILY TRUST; RICHARD ALBERT STINCHFIELD, individually and as successor trustee of the Robert S. Stinchfield Separate Property Revocable Trust, and as trustee of the Barbara Ellen Stinchfield Testamentary Trust; ROBERT S. STINCHFIELD SEPARATE PROPERTY REVOCABLE TRUST; THE BARBARA ELLEN STINCHFIELD TESTAMENTARY TRUST; WORKROOM SUPPLY, INC., a California corporation; SAFETY-KLEEN CORPORATION, a California corporation; the CITY OF DAVIS; JENSEN MANUFACTURING COMPANY; | |

1

```
VIC MANUFACTURING COMPANY;
MARTIN FRANCHISES INC., aka/dba
MARTINIZING DRY CLEANING,

          Defendants.
_____

AND RELATED COUNTER, CROSS,
AND THIRD PARTY CLAIMS.
_____/
```

----oo0oo----

Charles H. Lewis and Jane W. Lewis (the "Lewises") brought this action pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, for recovery of costs incurred removing hazardous substances from a piece of real property located in Davis, California ("Property"). Charles Lewis, the surviving plaintiff, and defendant Workroom Supply, Inc. ("Workroom") now request that the court approve the settlement they have reached.

I.   Factual and Procedural Background

This multi-party litigation concerns the contamination of the Property with tetrachloroethene ("PCE"), a chemical allegedly released through the operation of a dry cleaning facility on the Property. (See Second Am. Compl. ("SAC") ¶ 40 (Docket No. 197).) The parties include the alleged owners and managers of the Property during the relevant time period, the operators of the dry cleaning facility, the entities that supplied and removed the PCE, and the manufacturers of the equipment used in dry cleaning operations at the Property. (See id. ¶¶ 7-25; First Am. Third Party Compl. ("FATPC") ¶¶ 1-2 (Docket No. 198).) The City of Davis is also a party to the litigation because of its alleged role in maintaining the

2

underground sewer system that services the Property. (SAC ¶ 22.) Since the filing of the original complaint in 2003, the parties have filed numerous counterclaims, crossclaims, and third-party claims for contribution pursuant to 42 U.S.C. § 9613(f).

In February 1999, the California Regional Water Quality Control Board, Central Valley Region ("RWQCB"), informed the owners and operators of the Property that it had discovered PCE in the soil and groundwater at the Property. (SAC ¶ 40.) The RWQCB then issued a Cleanup and Abatement Order on October 2, 2002, instructing the current and past owners and operators of the Property to investigate the extent of the PCE contamination and to prepare work plans to address the contamination. (Id. ¶ 42.) Thereafter, some of the parties, including the Lewises, incurred costs in carrying out the activities ordered by the RWQCB. (Id. ¶¶ 42, 46.)

The Lewises filed the Complaint in this action on December 9, 2003, seeking various forms of declaratory relief and asserting claims for cost recovery and contribution, 42 U.S.C. §§ 9607, 9613; contribution and/or indemnity, Cal. Health & Safety Code § 25363(e); equitable indemnity and contribution; negligence; and breach of contract. (See Compl. (Docket No. 1).) Workroom was named as one of several defendants in the original Complaint, (id.), and in the Second Amended Complaint ("SAC") on the ground that it supplied PCE to the owners and/or operators of the dry cleaning business located on the Property, (SAC ¶ 20), and therefore is considered an "operator" under CERCLA, (Pls.' Opp'n to Mot. for Summ. J. at 3-7 (Docket No. 390)). Several defendants filed crossclaims naming Workroom as a cross-

3

defendant.  (E,g., Cross-Cl. by Suhs (Docket No. 13); Cross-Cl. by Newitt (Docket No. 27); First Am. Cross-Cl. by City of Davis ¶ 17 (Docket No. 229).)

        Workroom delivered PCE to the property from 1992 to 2004.  Workroom disputes claims that it is therefore liable as an "operator" of the property under CERCLA based on these deliveries.  (Def.'s Reply to Pls.' Opp'n to Mot. for Summ. J. at 3-6.)  Rather, Workroom argues that it lacked sufficient control over the facility to be considered an operator under CERCLA and that there is no evidence that any PCE contamination occurred during the delivery process.  (Id.)

        Workroom and Lewis have reached a settlement that they now ask the court to approve.  (Docket No. 406.)  Under the terms of the proposed settlement, Workroom would pay Lewis $30,000 to be used pursuant to the direction of the RWQCB to remediate the groundwater contamination at the Property.  (Hunter-Rocha Decl. ¶ 4 (Docket No. 407).)  Lewis, in turn, has agreed to dismiss his SAC as against Workroom with prejudice.  (Id. ¶ 5.)  Both parties have also agreed to give each other a "broad release with regard to the matters asserted in the instant action and with regard to the Site."  (Id. ¶ 6.)  Both parties' attorneys represent that the settlement is within the reasonable range of Workroom's potential liability and ability to pay, noting that Workroom's liability is contested and that there is uncertainty regarding the facts in dispute, the issues in controversy, and the court's potential ruling on Workroom's motion for summary judgment.  (Id. ¶ 9.)

        Under the terms of the agreement, the settlement is

4

contingent upon this court issuing an order that (1) approves the settlement, (2) dismisses with prejudice all claims asserted against Workroom in this proceeding, including those by Lewis, and (3) bars contribution and indemnity claims against Workroom in this proceeding. (Appl. for Determination of Good Faith Settlement at 3:14-19 (Docket No. 406).)

The City of Davis has filed an opposition to the settlement agreement requesting that the court apply the proportionate share approach, embodied in the Uniform Comparative Fault Act ("UCFA"), to determine the liability of the non-settling parties on all federal law and state law claims asserted in this action. (Davis's Opp'n to Appl. for Determination of Good Faith Settlement at 8:12-15 (Docket No. 415).) While all parties received notice of the proposed settlement, no party has otherwise filed an opposition.

II.  Discussion

   A.  Federal Law Claims

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." S.E.C. v. Randolph, 736 F.2d 525, 529 (9th Cir. 1984) (quoting Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982)). "Unless a consent decree is unfair, inadequate, or unreasonable, it ought to be approved." Id.; see also Stearns & Foster Bedding Co. v. Franklin Holding Corp., 947 F. Supp. 790, 813 (D.N.J. 1996) ("In deciding whether to approve a proposed settlement in a CERCLA case, a district court must weigh the 'fairness, adequacy and reasonableness' of the proposed settlement." (quoting United States v. Rohm & Haas Co., 721 F.

5

Supp. 666, 685 (D.N.J. 1989))).

The settlement proposed by Lewis and Workroom comes in a case that has dragged on for over eight years and in which trial is not set to begin for over a year more. In environmental clean-up cases such as this one, resolution is often achieved through the settlement process. Indeed, settlement is a favored outcome under CERCLA. City of Emeryville v. Robinson, 621 F.3d 1251, 1264 (9th Cir. 2010) (citing United States v. Atl. Research Corp., 551 U.S. 128, 138-39 (2007); Kotrous v. Goss-Jewett Co. of N. Cal., Inc., 523 F.3d 924, 930-31 (9th Cir. 2007)). Mindful of this fact, earlier in this proceeding the court approved a stay of litigation pending settlement talks. (Docket No. 124.) Although the initial settlement process outlined by the court was unsuccessful, settlement between parties remains an appropriate route to resolution in this CERCLA action.

Settlement with respect to Workroom is particularly appropriate given the uncertain evidence as to whether PCE contamination occurred during Workroom's deliveries to the property and the control that it exerted over the property's operations, and thus it is uncertain if it would have ultimately been found liable for clean-up costs associated with the Property. Both parties were represented by counsel in settlement negotiations, and both parties' attorneys represent that the terms of the settlement are the best available to settle Lewis' claims. (Hunter-Rocha Decl. ¶ 9.) These facts all suggest that the settlement is a fair and reasonable one.

The court must also determine whether the proposed settlement would prejudice the non-settling parties. The parties

6

to the settlement have not specified what effect the settlement has on the liability of the non-settling parties.[1] CERCLA itself does not specify how settlements in private party cost recovery actions should be apportioned or evaluated for fairness, merely charging district courts to "allocate response costs among liable parties using such equitable factors as the court determines are appropriate." 42 U.S.C. § 9613(f)(1). Nor has the Ninth Circuit issued a decision directly addressing the issue. Adobe Lumber, Inc. v. Hellman, No. CIV 05-1510, 2009 WL 256553, at *3 (E.D. Cal. 2009) (noting that "[i]n the twenty-eight years that CERCLA has been [sic] existence, the Ninth Circuit has never addressed the question of the proper credit method for settlements between private PRPs under CERCLA."). In a non-CERCLA case, the Ninth Circuit has, however, stated that "[t]he proportionate share approach is the law in the Ninth Circuit." In re Exxon Valdez, 229 F.3d 790, 796 (9th Cir. 2000).

Under the proportionate share approach, embodied in the Uniform Comparative Fault Act ("UCFA"), the liability of non-settling parties is reduced by the proportionate share of the

---

[1] Although the parties are silent on the issue, there is reason to believe that the parties intend for the court to apply the proportionate share approach. The parties state that the "issues of disputed fact and law and proof of liability in the instant Lewis-Workroom Settlement are similar to those presented by the Lewis-Newitt Settlement and, for the same reasons, the Lewis-Workroom Settlement also should be approved by the court." (Appl. for Determination of Good Faith Settlement at 5:4-7.) In the Lewis-Newitt Settlement, the parties specifically requested, and the court approved, application of the proportionate share of liability. (See Mem. of P. & A. in Supp. of Mot. Approving Settlement at 3:22-5:24 (Docket No. 363); Feb. 29, 2012, Order at 7:14-9:16.) It is thus reasonable that the parties assumed that the court would similarly apply the proportionate share approach to all settlement agreements in this case.

7

settling party or parties' obligations. <u>Adobe Lumber</u>, 2009 WL 256553, at *3 (citing <u>Am. Cyanamid Co. v. Capuano</u>, 381 F.3d 6, 20 (1st Cir. 2004)).  This is in contrast to the pro tanto approach of the Uniform Contribution Among Tortfeasors Act ("UCATA"), under which the liability of non-settling parties is reduced only by the dollar amount of the settlement.  <u>Id.</u> (citing <u>In re Jiffy Lube Sec. Litig.</u>, 927 F.2d 155, 161 (4th Cir. 1991)).  Under the UCFA, if the settling parties' liability is eventually determined to be greater than the settlement amount, the plaintiff's recovery is reduced; under the UCATA, if the settling parties' liability is less than the settlement amount, the remaining defendants must make up the deficit.  <u>Id.</u> at *4.

The overwhelming majority of courts in the Ninth Circuit that have addressed the issue have applied the UCFA in CERCLA cases.  <u>Adobe Lumber</u>, 2009 WL 256553, at *3 (citing cases).  These courts have noted that the UCFA furthers the Congressional intent behind CERCLA because it,

> 1) provides for equitable apportionment of responsibility; 2) furthers settlement because no precise dollar amount need be determined upon settlement; 3) eliminates the need for a good faith hearing; and 4) prevents culpable settlors from escaping liability (whereas under a pro tanto rule, a settlor who paid more than his fair share would reduce the liability of nonsettlors, a result which discourages settlement).

<u>Patterson Envtl. Response Trust v. Autocare 2000, Inc.</u>, No. CIV F 01-6606, 2002 U.S. Dist. LEXIS 28323, at *14 (E.D. Cal. June 28, 2002) (citing <u>Comerica Bank-Detroit v. Allen Indus., Inc.</u>, 769 F. Supp. 1408, 1414 (E.D. Mich. 1991)).  Under the pro tanto approach, in contrast, the parties injured by a low settlement -- the nonsettling defendants -- have no ability to prevent or

8

affect the settlement amount.  The proportionate share approach thus makes it more likely that pre-trial settlements and the overall litigation will achieve an equitable allocation of liability among all responsible parties.

In this case, the court will similarly employ the proportionate share approach to determine the effect of settlements, as that method better facilitates the equitable allocation of liability in accordance with the statutory guidance of CERCLA section 113(f)(1).  See also New York v. Solvent Chem. Co., Inc., 984 F. Supp. 160, 168 (W.D.N.Y. 1997) (concluding that the UCFA "is consistent with the purposes behind [CERCLA] sections 113(f)(1) and 113(f)(2)"); Hillsborough County v. A & E Road Oiling Serv., Inc., 853 F. Supp. 1402, 1410 (M.D. Fla. 1994) (explaining that the purposes of CERCLA include prompt clean up and the fair allocation of costs and declaring that the "UCFA effectively embraces both"); United States v. SCA Serv. of Ind., Inc., 827 F. Supp. 526, 535 (N.D. Ind. 1993) ("The UCFA will better promote CERCLA's policy of encouraging settlements, while securing equitable apportionment of liability for [n]on-settlors.").

The settlement is also contingent upon a contribution bar that would protect Workroom from contribution and indemnity claims "with regard to the matters asserted in this action and with regard to the Site."  (Appl. for Determination of Good Faith Settlement at 3:17-19.)  In order to facilitate settlement in multi-party litigation, a court may review settlements and issue bar orders that discharge all claims of contribution by non-settling defendants against settling defendants.  See In re

9

Heritage Bond Litig., 546 F.3d 667, 677 (9th Cir. 2008); Franklin v. Kaypro Corp., 884 F.2d 1222, 1225 (9th Cir. 1989).  A number of courts have held that it is permissible to bar contribution claims against settling parties in a CERCLA contribution action, "in accordance with the federal common law as exemplified by § 6 of the Uniform Comparative Fault Act or § 4 of the Uniform Contribution Among Tortfeasors Act."  Responsible Envtl. Solutions Alliance v. Waste Mgmt., Inc., No. 3:04cv013, 2011 WL 382617, at *4 (S.D. Ohio Feb. 3, 2011) (citing Stearns & Foster Bedding Co., 947 F. Supp. at 813; Foamseal, Inc. v. Dow Chem., 991 F. Supp. 883, 886 (E.D. Mich. 1998); Barton Solvents, Inc. v. Sw. Petro-Chem, Inc., 834 F. Supp. 342, 345-46 (D. Kan. 1993); Am. Cyanamid Co. v. Kino Indus., Inc., 814 F. Supp. 215, 219 (D.R.I. 1993); Comerica Bank-Detroit, Inc., 769 F. Supp. at 1413).  Indeed, another court in this district has noted that such an order is often particularly appropriate in CERCLA cases. AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc., Nos. CIV. S-00-113, S-04-1494, 2007 WL 1946635, at *2 (E.D. Cal. July 2, 2007) (citing Foamseal, Inc., 991 F. Supp. at 886).

    In considering whether to approve the settlement, the court notes that it is entirely reasonable that Workroom would wish to free itself from the burden of litigation by settling the claims between Lewis and itself.  It is also entirely reasonable that Lewis would wish to accept certain payment from a defendant whose liability is uncertain and who has a limited ability to pay.  Although Lewis and Workroom did not explain how the $30,000 settlement payment compares to the total clean-up costs, the fact that Lewis, who would bear the risk that $30,000 ultimately

10

proves inadequate, contends that it is a reasonable settlement payment suggests that it is an adequate amount.  The City of Davis stated that it would not object to the proposed settlement if the court applied the proportionate share approach to determine the effect of the settlement, which it has done. (Davis's Opp'n to Appl. for Determination of Good Faith Settlement at 3 n.1.).  The court can therefore find no reason not to find the proposed settlement a fair, reasonable, and adequate one.

   B.   State Law Claims

        Although some courts asked to approve an agreement such as this one that would settle both CERCLA and state law claims have considered exclusively federal law, Acme Fill Corp. v. Althin DC Med., Inc., No. C 91-4268, 1995 WL 822664, at *9 (N.D. Cal. Nov. 2, 1995), others have considered both federal and state law, AmeriPride Servs. Inc., 2007 WL 1946635, at *3-4.  Under California law, parties to a settlement in an action with multiple tortfeasors may petition the court to make a determination that the settlement was entered into in good faith. See Cal. Civ. Proc. Code §877.6(a).  A hearing need not be held if non-settling parties are afforded an opportunity to respond to the request for good faith determination.  See Cal. Civ. Proc. Code § 877.6(a)(2).

        In determining whether a settlement agreement has been made in good faith, California courts consider "(1) a rough approximation of plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount paid in settlement; (3) the allocation of settlement proceeds among plaintiffs; and (4) a

11

recognition that a settlor should pay less in settlement than he would if he were found liable after a trial." Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1064 (9th Cir. 2011) (quoting Tech-Bilt, Inc. v. Woodward-Clyce Assocs., 38 Cal. 3d 488, 499 (1985)) (internal quotation marks omitted). "Other relevant considerations include the financial conditions and insurance policy limits of settling defendants, as well as the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants." Id.

In this case, there is no suggestion of collusion or fraud. As noted above, although the parties have not shown how the $30,000 settlement payment compares to the total clean-up costs, the fact that Lewis is willing to accept that amount while bearing the risk that it is less than what Workroom might ultimately have been required to pay suggests that it is in the range of appropriate settlement amounts. Additionally, under section 877, any party challenging a settlement bears the burden of establishing that the proposed settlement amount is "so far 'out of the ballpark' that the equitable objectives of § 877 are not satisfied." Tyco Thermal Controls LLC v. Redwood Indus., No. C 06-07164, 2010 WL 3211926, at *13 (N.D. Cal. Aug. 12, 2010) (citing Tech-Bilt, 38 Cal. 3d at 499-500). No party here has attempted to make such a showing.

Furthermore, under California Code of Civil Procedure section 877.6(a)(2), "[i]f none of the nonsettling parties files a motion within 25 days of mailing of the notice, application, and proposed order, or within 20 days of personal service, the court may approve the settlement." As previously noted, although

12

the City of Davis has filed an opposition to the settlement agreement, the purpose of the motion is to address the liability of the non-settling parties and request that the court apply UCFA's proportionate share approach, not to oppose the good faith of the settlement.  As the court will apply the proportionate share approach to determine the legal effect of the settlement agreement on the liability of the non-settling defendants, no opposition to the settlement agreement remains.

        Accordingly, the court finds that the settlement was entered into in good faith.

        IT IS THEREFORE ORDERED that:

        (1) The settlement between Workroom and Lewis is approved;

        (2) All claims asserted by Lewis against Workroom in the SAC be, and hereby are, DISMISSED with prejudice;

        (3) All claims for contribution or indemnity against Workroom arising out of the clean-up of the Property be, and hereby are, barred; and

        (4) Section 6 of the UCFA is adopted as the law in this case for the purpose of determining the legal effect of the settlement agreement on the liability of the non-settling defendants.

DATED:  November 8, 2012

WILLIAM B. SHUBB  
UNITED STATES DISTRICT JUDGE