UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| CHARLES H. LEWIS and JANE W. LEWIS,<br><br>        Plaintiffs,<br><br>   v.<br><br>ROBERT D. RUSSELL; IRENE RUSSELL; BEN J. NEWITT; the Estate of PHILLIP NEWITT, Deceased; JUNG HANG SUH; SOO JUNG SUH; JUNG K. SEO; THE DAVIS CENTER, LLC; MELVIN R. STOVER, individually and as trustee of the Stover Family Trust; STOVER FAMILY TRUST; RICHARD ALBERT STINCHFIELD, individually and as successor trustee of the Robert S. Stinchfield Separate Property Revocable Trust; ROBERT S. STINCHFIELD SEPARATE PROPERTY REVOCABLE TRUST; THE BARBARA ELLEN STINCHFIELD TESTAMENTARY TRUST; WORKROOM SUPPLY, INC., a California corporation; SAFETY-KLEEN CORPORATION, a California corporation; the CITY OF DAVIS; JENSEN MANUFACTURING COMPANY; VIC MANUFACTURING COMPANY; MARTIN FRANCHISES INC., aka/dba MARTINIZING DRY CLEANING,<br><br>        Defendants. | No. 2:03-cv-02646 WBS AC<br><br><u>MEMORANDUM & ORDER RE: JOINT MOTION FOR GOOD FAITH SETTLEMENT</u> |

        Plaintiffs Charles and Jane Lewis brought this action

under, inter alia, the Comprehensive Environmental Response, Compensation, and Liability Act ("CERLCA"), 42 U.S.C. § 9601 et seq. against the above captioned defendants in 2003. (See Second Amended Compl. ("SAC") (Docket No. 197).) Before the court is a joint motion for Good Faith Settlement and Order Dismissing and Barring Claims. (Docket No. 551.)

I. Background

Defendant Robert D. Russell operated a dry cleaning business at 670 G Street, in Davis, California ("the Site") from 1964 to 1971. (Id. ¶ 29.) In 1971, defendants Ben and Phillip Newitt ("Newitts") took over the business and leased the dry cleaning operation to Charles and Jane Lewis in 1975. (Id. ¶¶ 33-34.) The Lewises[1] then purchased the business in 1977 and operated it until August 1996. (Id. ¶ 34.) The Lewises later leased the dry cleaning business to defendants Jung Hang Suh, Soo Jung Suh, and Jung K. Seo ("Suhs") from August 1996 to May 2005.[2] (Id. ¶ 36.)

In February 1999, the California Regional Water Quality Control Board, Central Valley Region ("Control Board") advised

---

[1] Charles and Jane Lewis have passed since bringing this action. References to the "Lewises" now includes the estate of Charles H. Lewis and Robert Zehnder as the personal representative of Charles Lewis.

[2] The Suhs are not parties to the settlement. The Suhs have not participated in the litigation since filing their cross-claims in 2004. (Decl. of Jennifer Hartman King ("King Decl.") ¶ 6 (Docket No. 551-1).) The Settling Parties' claims against the Suhs were discharged in 2010 after the Suhs filed bankruptcy. (Id. ¶ 8.) The City of Davis obtained summary judgment on the cross-claims the Suhs asserted against the city in February 2018. (Id. ¶ 7.)

the Lewises that the chemical tetrachloroethene, also known as perchlorate ("PCE"), had been discovered in the soil and groundwater at and around the Site. (Id. ¶ 29, 40.) The Lewises contend that Russell, the Newitts, and the Suhs permitted the sudden and accidental releases of PCE onto the Site and adjacent properties while they were operating the dry cleaning business. (Id. ¶ 43.) Additionally, the Lewises allege the City of Davis ("City") caused or contributed to the release of PCE. (Id. ¶ 43-44.)

In October 2002, the Control Board issued a Cleanup and Abatement Order No. R5-2002-0721 (the "Order") commanding the current and former owners and operators of the Site to investigate the extent of the contamination and prepare a plan to remedy it. (Id. ¶ 42.) Despite the Order, the Lewises alleged the captioned defendants failed to participate in the decontamination efforts. (Id. ¶ 45.) Consequently, the Lewises brought this action seeking to recover costs and contribution under CERCLA; statutory contribution and indemnity pursuant to Carpenter-Presley-Tanner Hazardous Substance Account Act, California Health and Safety Code § 25363(e); breach of contract; equitable indemnity and contribution; negligence; and declaratory relief. (See SAC at 21-23.)

After years of investigation, the Control Board approved a Data Gap Investigation Report and Source Area Remediation Plan ("Remediation Plan") in 2015. (Decl. of Jennifer Hartman King ("King Decl.") ¶ 25-26 (Docket No. 551-1).)

On March 15, 2019, the "Settling Parties"[3] agreed, without admitting liability or wrongdoing, to mutually release, with prejudice, existing and future claims against each other related to the existing contamination at the Site. (Id. at ¶ 15.) In exchange for this mutual release, the Settling Parties agreed to fund The Davis Center Remediation Project Trust ("Trust") to cover the costs of the Site's decontamination. (Settlement Agreement and Mutual Release ("Settlement Agreement") at 3 (Docket No. 551-2).) The Lewises, The Davis Center, and Potter-Taylor have collectively agreed to pay a total of $1,740,000.00. (Id.) The City will not contribute funds to the Trust. (King Decl. ¶ 34.)

The settling parties also entered into an Agreement and Covenant Not to Sue ("Covenant") with the Control Board to memorialize the agency's approval of the decontamination plan, document the mutual release of claims, and serve as an administrative settlement under § 9613(f)(2) of CERCLA. (King Decl. ¶¶ 37-38.)

The Settlement and Covenant are contingent upon this court finding the terms of the Settlement were reached in good faith. Consequently, the Settling Parties now jointly seek a

---

[3] These parties include the City; the "Landowners," specifically The Davis Center, LLC, Emily A. Stover, individually and as Trustee of the Stover Family Trust and as Personal Representative for Melvin Stover (Deceased), and Richard Albert Stinchfield, individually and as Trustee of the Robert S. Stinchfield Separate Real Property Trust and as Trustee of the Barbara Ellen Stinchfield Testamentary Trust; the "Potter Taylor" entities, including Potter Taylor & Co., Potter, Long, Adams & Taylor Ltd., Potter-Taylor, Inc., Potter Taylor & Scurfield, Inc.; and the Lewises. (King Decl. ¶ 15.)

4

determination that the settlement was reached in good faith and an order dismissing all claims against them, and barring all future contribution and indemnity claims, with prejudice. (Joint Mot. for Good Faith Settlement at 3 (Docket No. 551).)

II. Discussion

    A. Applicable Law

The settling parties have settled claims brought under both state and federal law. Accordingly, the court must evaluate the "good faith" of each settlement pursuant to its applicable law. See Mason & Dixon Intermodal, Inc. v. Lapmaster Int'l LLC, 632 F.3d 1056, 1060 (9th Cir. 2011) (citation omitted) ("When a district court . . . hears state law claims based on supplemental jurisdiction, the court applies state substantive law to the state law claims.").

Under federal law, one of CERCLA's "core principles" is to "foster settlement through its system of incentives and without unnecessarily further complicating already complicated litigation." AmeriPride Servs. v. Tex. E. Overseas, Inc., 782 F.3d 474, 486 (9th Cir. 2015) (quoting Chubb Custom Ins. Co. v. Space Sys./Loral, Inc., 710 F.3d 946, 971 (9th Cir. 2013)). District courts retain discretion to determine the most equitable method of accounting for settlements in private-party contribution actions. Id. at 487 (citing 42 U.S.C. § 9613(f)(1)). Ultimately, the court is must find that the agreement is roughly correlated with some acceptable measure of comparative fault that apportions liability among the settling parties according to a rational estimate of the harm the potentially responsible parties have done. Arizona v. City of

Tucson, 761 F.3d 1005, 1012 (9th Cir. 2014) (citations and internal quotation marks omitted). While the courts may consult "model acts" like the Uniform Comparative Fault Act ("UCFA") and the Uniform Contribution Among Tortfeasors Act ("UCATA"), they are under no obligation to do so.[4] AmeriPride Servs., 782 F.3d at 486.

An order barring claims is "appropriate to facilitate settlement, particularly in a CERCLA case." Tyco Thermal Controls LLC v. Redwood Indus., No. C06-07164 JF (PVT), 2010 WL 3211926, at *5 (N.D. Cal. Aug. 12, 2010) (citing AmeriPride Servs. Inc. v. Valley Indus. Servs., Inc., Nos. CIV. S-00-113-LKK JFM, S-04-1494-LKK/JFM, 2007 WL 1946635, at *2 (E.D. Cal. July 2, 2007)). The contribution bar in § 9613(f)(2) applies to parties who have resolved their liability in relation to the government. 42 U.S.C. § 9613(f)(2). "[C]ourts review settlements and generally enter contribution and indemnity bar orders in CERCLA cases if the settlement is fair, reasonable, and adequate." Coppola v. Smith, No. 1:11-CV-1257 AWI BAM, 2017 WL 4574091, at *3 (E.D. Cal. Oct. 13, 2017) (collecting cases).

California's approach to evaluating settlements and implementing contribution bars is strikingly similar. California

---

[4] The UCFA and UCATA are model acts proposed by the National Conference of Commissioners on Uniform State Laws that advocate competing methods of accounting for a settling party's share when determining liability. AmeriPride Servs., 782 F.3d at 483. Courts in California have adopted the UCFA approach, others the UCATA approach, and others still simply apply §§ 877 and 877.6 to CERCLA claims. See Coppola, 2017 WL 4574091, at *3 (noting "[t]he methodology used by federal courts in California to assess [] settlements and contribution bars is not always uniform").

6

state substantive law on settlements is codified at California Code of Civil Procedure Section 877. Section 877.6, the procedural mechanism for implementing § 877, is intended to promote the equitable sharing of costs among the parties at fault and encourage settlement. Tech-Bilt, Inc. v. Woodward-Clyde & Ass'n, 38 Cal. 3d 488, 494 (1985). It will "bar any other joint tortfeasor or co-obligor from any further claims against the settling tortfeasor or co-obligor for equitable comparative contribution, or partial comparative indemnity, based on comparative negligence or comparative fault." Cal. Civ. P. § 877.6(c).

Courts are permitted to approve a settlement under § 877.6 if it was made in good faith. (Id.) To access whether a settlement was made in good faith, courts consider the following, among other practical factors: (1) a rough approximation of the plaintiffs' total recovery and the settlor's proportionate liability; (2) the amount to be paid in settlement; (3) the allocation of settlement proceeds among the plaintiffs; (4) a recognition that a settlor should pay less in settlement than he would if he were found liable after a trial; (5) the financial conditions and insurance policy limits of the settling defendants; and (6) the existence of collusion, fraud, or tortious conduct aimed to injure the interests of non-settling defendants. Tech-Bilt, 38 Cal. 3d at 499. Ultimately, the determination is left to the trial court's discretion. Id. at 502.

The factors used to evaluate whether a CERCLA settlement is fair, reasonable, and adequate parallel those used

7

to determine whether a settlement is in good faith under California law. City of West Sacramento v. R & L Business Management, No. 2:18-cv-900 WBS EFB, 2019 WL 2249629, at *2 (E.D. Cal. May 24, 2019) (citing Coppola, 2017 WL 4574091, at *3). Consequently, the court will make findings regarding good faith under California law as part of its determination of whether the settlement of the CERCLA claim is fair, adequate, and reasonable. Id. (internal quotations and alterations omitted).

  B. Application as to Plaintiff's Claims

   Tech-Bilt's first four factors demand that the court consider the amount of the settlement in proportion to the settling parties' liability, although the settlement amount need only be in the 'ballpark'." 38 Cal. 3d at 499-500.

   Here, the Settling Parties agree that the settlement and their previous monetary contributions[5] reflect the proportionate shares of their alleged liability. (King Decl. ¶ 45.) In order to fully fund the Remediation Plan and reimburse the Control Board $24,380.32 for oversight costs, the Lewises have agreed to pay $487,917.00 to the Trust while The Davis Center and Potter-Taylor collectively will contribute $1,252,083.00. (Settlement Agreement at 3.) The Settling Parties contend the settlement amount is reasonable because it will fully fund the Remediation Plan and reimburse the Control Board. (King Decl. ¶ 42.) Further, the Settlement appears to be in the "ballpark" of the Settling Parties' proportionate share of

---

[5] Each of the Settling Parties previously contributed between $40,000 and $60,000 to pay for the Site investigation during mediation. (King Decl. ¶ 44.)

alleged comparative liability because the Settling Parties' total monetary contribution -- $1,740,000.00 -- exceeds their cumulative liability because none of the Remediation Plan or the Control Board oversight costs have been allocated to any non-settlors. (Id. ¶ 43.) Based on these representations, the court concludes that the Settling Parties have satisfied Tech-Bilt factors one and two.

Similarly, the allocation of the Trust to fund the Remediation Plan is appropriate because it is designed to accomplish the required remedial cleanup at the Site. (Settlement Agreement at 3.) Accordingly, the Settling Parties have satisfied Tech-Bilt factor three.

Under factor four, the Settling Parties estimate that, in light of the complexity of this litigation and the expenses incurred over almost two decades of conflict, their monetary contributions toward the Settlement are less than what each party would have paid had it been found liable at trial. (Id. ¶ 47.) This settlement also saves the parties' further litigation costs and the court's time. See City of West Sacramento, 2019 WL 2249629, at *3 (citing Coppola, 2017 WL 4574091, at *4). These facts favor approving the settlement under Tech-Bilt's fourth factor.

The fifth and sixth Tech-Bilt factors consider the settling parties' financial ability to meet the terms of the settlement and the settling parties' potential to injure the interests of non-settling defendants. 38 Cal. 3d at 499. Here, the Settling Parties engaged in lengthy negotiations and mediations before arriving at the settlement's final terms. (King Decl. ¶ 47.) They each evaluated their available insurance

policy limits and financial conditions and balanced those evaluations against the facts of the case and the strength of the claims against each party, and subsequently reached this agreement. (King Decl. ¶ 50.) Accordingly, factor five favors settlement.

Finally, the court must consider the settlement's potential to injure the interests of non-settling defendants. Here, the only non-settling defendants are the Suhs. They have not substantially participated in the litigation since filing their cross-claims in 2004. (King Decl. ¶ 6.) The Settling Parties' claims against the Suhs were discharged in 2010 after they filed bankruptcy, and the City obtained summary judgment on the cross-claims they had asserted against it in February 2018. (Id. ¶¶ 7, 8.) Attempts to engage the Suhs in settlement negotiations were unsuccessful (Id. ¶ 53), and any attempt to engage them in settlement could not have resulted in any contribution from them because of their discharge in bankruptcy. (Id. ¶ 8.) Accordingly, they do not oppose this Settlement Agreement. The absence of an opposition to the settlement agreement "is highly telling and is clearly indicative of reasonableness and good faith." Coppola, 2017 WL 4574091, at *5. The court finds the settlement negotiations involved no collusion, fraud, or tortious conduct intended to injure the non-settling parties.

Overall, the Tech-Bilt factors favor a finding of reasonableness and good faith. Accordingly, the court finds the settlement was made in good faith and is fair, reasonable, and adequate, and the court will approve the settlement and enter a

contribution and indemnity bar order.

IT IS THEREFORE ORDERED that the parties' joint Motion for Good Faith Settlement (Docket No. 551), be, and the same hereby is, GRANTED.

It is further ORDERED that:

1. Under California Code of Civil Procedure §§ 877 and 877.6, and 42 U.S.C. § 9613(f), the settlement agreement reached by the settling parties is in good faith and is a fair, adequate, and reasonable settlement;
2. All pending claims and cross-claims against the settling parties in the above-entitled actions are dismissed with prejudice;
3. the Covenant constitutes an administrative settlement with the State for purposes of CERCLA § 9613(f)(2);
4. Any and all claims or future claims for contribution or indemnity, arising out of the facts alleged in the Second Amended Complaint, and as further identified and provided for in the settlement, regardless of when such claims were asserted or by whom, are barred.

Dated: October 16, 2019

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

11